CONTINENTAL & COMMERCIAL NAT. BANK OF CHICAGO v. COBB.

(Circuit Court of Appeals, First Circuit. November 27, 1912.)

No. 996.

1. GUARANTY (§ 28*)—ACTION—WHAT LAW GOVERNS.

The rule applied that, where a contract of guaranty and the note guaranteed were made in Illinois, both were governed as to the guarantor's liability by the statutes of that state.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 29; Dec. Dig. § 28.*]

2. GUARANTY (§ 71*)—STATUTES—CONSTRUCTION.

Hurd's Rev. St. Ill. 1911, c. 132, § 1, provides that when any person bound as surety for another apprehends that his principal is likely to become insolvent or to remove from the state without discharging the contract, if a right of action has accrued he may, in writing, require the creditor forthwith to sue on the same, and unless the creditor, within a reasonable time and with due diligence, commences suit and prosecutes

the same to final judgment and execution the surety shall be discharged. *Held* that the statute includes a contract of guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 81; Dec. Dig. § 71.*

For other definitions, see Words and Phrases, vol. 8, pp. 6811–6813.]

3. GUARANTY (§ 71*)—DISCHARGE OF GUARANTOR—STATUTES—CONTRACT PROVISIONS.

Where a guaranty of payment of an indebtedness to a bank stipulated that the bank, at any time, in any manner, and on such terms as it saw fit, might extend the time and alter the manner of payment of the indebtedness or any part thereof by the principal debtors without notice to the guarantor, without affecting the guarantor's liability, such provision superseded the guarantor's statutory right to compel the creditor to sue the principal debtors on notice as a condition to the guarantor's discharge, conferred by Hurd's Rev. St. Ill. 1911, c. 132, § 1.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 81; Dec. Dig. § 71.*

Discharge of guarantor by discharge of principal without payment or satisfaction, see note to Ætna Indemnity Co. v. Auto-Traction Co., 78 C. C. A. 266.]

4. GUARANTY (§ 62*)—ADDITIONAL COLLATERAL SECURITY—NEGLIGENCE OF CREDITOR.

Where a creditor, in addition to defendant's guaranty of the debt, received from the principal debtors as collateral security a note secured by a trust deed of real estate, and the guarantor had notice of a sale of the real estate for taxes in ample time to have redeemed the same in order to protect the security if he had desired to do so, he was not discharged from liability because of the creditor's failure to foreclose the trust deed and to pay the taxes for which the land was ultimately sold, the primary duty to look after the collateral resting on defendant, plaintiff's duty, if any, being secondary only.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 72; Dec. Dig. § 62.*]

5. COURTS (§ 356*)—PROCEDURE—LAW ACTION TRIED TO COURT—SCOPE OF APPEAL.

The rule applied that, under Rev. St. §§ 649, 700 (U. S. Comp. St. 1901, pp. 525, 570), providing for general and special findings in cases where a jury trial is waived, there can be no appeal on any question except those arising in the progress of the trial or with reference to questions of law arising on findings of ultimate facts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356;* Appeal and Error, Cent. Dig. § 3397.]

In Error to the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Action by the Continental & Commercial National Bank of Chicago against John C. Cobb. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Hollis R. Bailey, of Boston, Mass., and Abraham Meyer, of Chicago, Ill. (Currier, Rollins, Young & Pillsbury, of Boston, Mass., and Mayer, Meyer, Austrian & Platt, of Chicago, Ill., on the brief), for plaintiff in error.

Jeremiah Smith, Jr., of Boston, Mass., for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a suit at common law, in which jury trial was waived, upon the following contract:

"This agreement, made in Chicago, Illinois, this 14th day of September, 1905, by John C. Cobb, of Boston, Massachusetts, with the Commercial National Bank of Chicago, witnesseth, that:

"Whereas, said bank has this day in consideration of this contract (and other considerations), made a certain loan of thirty-six thousand ($36,000) dollars, to Albert W. Cobb and Chas. H. Lawrence, evidenced by a promissory note signed by said Albert W. Cobb and Lawrence, payable to said bank, on demand, bearing interest at 5% per annum, with which note are deposited as collateral security certificates for 300 shares preferred stock of Cobb Cocoa Company, and two certain demand promissory notes for $10,000 each, signed by Albert W. Cobb, dated December 15th, 1897, each secured by a certain trust deed (being two trust deeds):

"Now, therefore, upon the further consideration of one dollar, and other valuable considerations, the receipt whereof is hereby acknowledged, said John C. Cobb does hereby guarantee said Bank, its successors and assigns, the full and prompt payment, at the rate (or in the amount) of not less than seventy-two hundred ($7,200) dollars per annum, and interest, of the entire sum of money now or at any time hereafter owing by said Albert W. Cobb and Lawrence on account of their said indebtedness to said bank incurred by virtue of said loan and now evidenced by the aforesaid note for $36,000.

"It is expressly stipulated, however, that said bank is not entitled to demand payments of more than $7,200 per annum and interest, under this guaranty, and also that the liability of said John C. Cobb hereunder shall in no event exceed the principal sum of $36,000 and accrued interest thereon at 5% per annum from this date.

"It is also stipulated that said bank may, at any time, in such manner and upon such terms as it may see fit, extend the time and alter the manner for the payment of said indebtedness or any part thereof, of said Albert W. Cobb and Lawrence, without notice to John C. Cobb, he hereby agreeing beforehand that no such alteration of time or terms of credit shall in any manner affect the liability of John C. Cobb hereunder; and that the guaranty hereby established shall be a continuing guaranty and shall remain in full force and effect until the aforesaid indebtedness of Albert W. Cobb and Lawrence is fully paid and satisfied; further that said Bank need give no notice of acceptance of this guaranty.

"In witness whereof said John C. Cobb hereto sets his hand and seal at the place and time aforesaid.                John C. Cobb. [Seal.]"

The note to which this contract was collateral was as follows:

"36000.00                              Chicago, Ill., Sep. 14, 1905."

"On demand after date we promise to pay 'the Commercial National Bank of Chicago,' or order thirty-six thousand dollars, at its office, for value received, with interest at the rate of five per cent. per annum, after date payable semi-annually, having deposited as collateral security for the payment thereof, and for the payment of any other liability or liabilities (due or to become due or that may hereafter be contracted) of the undersigned, or the guarantors or the endorsers hereon, or any of them, to said bank the following described property: 300 shs. Pfd. Stock Cobb Cocoa Co., two notes $10,000.00 each of Albert W. Cobb dated Dec. 15, 1897, due on demand both secured by trust deeds which we hereby give the said bank, or its attorney appointed for that purpose, or the holder hereof, authority to sell, all, or any part thereof, on the maturity of this note, or at any time thereafter, or before in the event of said securities depreciating in value, or on the maturity of any of the liabilities above mentioned, at public or private sale, at the discretion of said bank, or the holder hereof, without advertising or giving us any notice thereof, and to apply so much of the proceeds thereof, to the payment of this note and other obligations above mentioned, as may be necessary to pay the same, with all the interest due thereon, and also to the payment of all expenses, including reasonable attorney's fees and

charges paid or incurred for making papers, attending and making the sale of said collateral security; and if the sale be public, or at broker's board. or be made by an attorney appointed as aforesaid, the holder of this note may purchase thereat, the same as any other person, and in case the proceeds of the sale of the said collateral shall not cover the principal, interest and expenses, we promise to pay the deficiency forthwith after such sale with interest at 7 per cent. per annum. And in case of an exchange of, or addition to, or substitution for the collateral above named, or any part thereof, the provisions of this note shall extend to such new or additional collateral. And we also authorize said bank, at the election of its president, cashier, or any officer thereof, at any time to apply any and all money it may have in our deposit account, or the deposit account of any of us, towards the payment of this note, or any of the obligations mentioned above, whether due or not.                                   Albert W. Cobb.
"Due                                        Chas. H. Lawrence."

This note had on the back the following indorsements showing payments thereon, which were admitted and found by the court to be correct:

"$4500.00 Paid Oct. 13, 1905 also endorsed on $10000.00 note Albert W. Cobb secured by Englewood lots.

"$3500.00 Paid Nov. 1, 1905 also endorsed $1000.00 on $10000.00 note Albert W. Cobb secured by Englewood property & 2500.00 on 10000.00 note Albert W. Cobb, sec. by lot on Lake Forest Property.

"200.00 paid Dec. 3, 1905 also endorsed 200.00 on 10000.00 note Albert W. Cobb secured by Lake Forest Property

"2000.00 paid on this note April 6. 1906 and also endorsed on $10,000 note A. W. Cobb dated 12/15/1897

"2000.00 paid Apr. 19. 1906 also endorsed on 10,-000.00 note A. W. Cobb dated 12/15/1897

"600.00 Paid June 11, 1906
"2500.00 Paid Sept. 16, 1907
"7715.00   "   Jan. 18, 1909
" 60.00   "   Jan. 18, 1909

Interest on within, paid to Mar. 14, 1906

Do. Sept. 14, 1906
Do. Mar. 14, 1907
Do. Sept. 14, 1907

Do. Mar. 14, 1908
Jan. 18, 1909 Interest on within paid to Mar. 14, 1909 $975

"The Commercial National Bank of Chicago, Ill.
"By N. R. Losch, Cashier."

[1] Both the contract and note were made in the state of Illinois, and, under the circumstances, are for the purposes of this case governed by the statutes of that state. The only statute in point is section 1 of the act of February 27, 1874 (Hurd's Revised Statutes, 1911, p. 2305), as follows:

"That when any person bound as surety for another for the payment of money, or the performance of any other contract in writing, apprehends that his principal is likely to become insolvent or to remove from the state, without discharging the contract; if a right of action has accrued on the contract, he may, by writing, require the creditor forthwith to sue upon the same; and unless such creditor shall within a reasonable time, and with due diligence, commence suit thereon, and prosecute the same to final judgment and execution, the surety shall be discharged; but no such discharge shall in any case affect the rights of the creditor against the principal debtor."

No payments had been made on the note by Cobb, the defendant in this suit. Before the bringing of the suit the Commercial National

Bank of Chicago transferred to the plaintiff all its rights in and to both the note and the agreement of John C. Cobb, the defendant, which we have copied. At the conclusion of some correspondence which we need not detail, the following letter of January 17, 1910, was written to the Commercial National Bank by Andrew R. Sheriff, acting as attorney in behalf of the defendant John C. Cobb:—

"925 The Rookery, Chicago,

"January 17, 1910.

"Commercial National Bank, Chicago, Illinois.

"Gentlemen: In response to your vice-president Vernon's letter of the 10th inst. referring to the Albert A. Cobb and Lawrence indebtedness, in view of your statement that your people refuse to sell the Lake Forest mortgage and insist that the whole matter should be settled at once, it seems that my several offers to expedite payment or liquidation of the debt—I acting on the behalf of Mr. John C. Cobb—are expressly declined by your bank.

"Therefore the only thing which now appears open for you to do is to sue the principal debtors, and this Mr. John C. Cobb, without prejudice to any rights or forfeitures heretofore existing or arising in his favor, hereby requires you to do, inasmuch as he apprehends that the principal debtors, and each of them, are likely to become insolvent without discharging their indebtedness.

"Yours very truly,                     Andrew R. Sheriff."

The judgment of the District Court was for the defendant below, whom we name herein as the defendant, and thereupon the plaintiff below, whom we name herein as the plaintiff, sued out this writ of error. The main defense rests on the statute of Illinois, supplemented by the letter from Mr. Sheriff, which we have stated.

[2] We will preface our discussion of the effect of that statute by observing that there are no authoritative decisions in Illinois which help to solve this case. The plaintiff maintains that the statute has relation only to sureties in the special sense of the word, because it maintains that the defendant in this case is a guarantor. This is altogether too narrow a construction of a remedial statute to meet the approval of any court of justice. The word "surety" is a generic word, while "guaranty" is specific. Guarantors have certain specific protected rights which other sureties do not have; but they are entitled to every equitable right of protection which any surety has. For example, Chitty on Contracts, the 11th American edition, which is the standard edition, in its chapter on Guaranties and Indemnities at once launches out into the constant use of the word "surety." Vol. 1, p. 738, and sequence.

Story's Equity Jurisprudence, 13th edition, where it treats of the equitable rights of sureties, commencing at vol. 1, p. 337, describes these equitable rights using only the word "surety," and making no reference to guarantors, indorsers, or other collateral obligors, although all the equitable rights named by the learned author pertain as much to guarantors and indorsers as to any other surety. In treating of these equitable rights it was not necessary to make any distinction between classes of sureties; and the subject-matter of the Illinois statute claimed to be operative here applies to all the same fundamental equitable rights, and it also has no more occasion to differentiate

than had Story. Indeed, the Illinois statute is only putting in form what is a rule of equity, that sometimes, in behalf of any surety, it will compel a creditor to proceed primarily against the debtor on being properly indemnified, and on being properly furnished the costs of litigation. The same edition of Story, vol. 1, 337. Therefore, it would be unreasonable to suppose that the Illinois statute undertook to classify collateral obligors so as to exclude one who came in by an independent contract, whatever its nature.

An illustration of what we mean is shown in the definition of suretyship in Bouvier's Law Dictionary, edition of 1897. While the various specifications found under the title "Suretyship" might form the basis of an argument that there was an intention to distinguish guarantors as not sureties, yet the second paragraph distinctly includes under the general definition a mere guarantor, as follows:

"It [meaning suretyship] is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to' satisfy the obligation if the debtor does not."

This clearly does not describe a surety in the peculiar sense of the word when it is applied to the person who obligates himself simultaneously and in the same instrument, and with the same consideration and the same obligation, as the principal debtor, while it specifically describes the limited obligation of a surety who is also a mere guarantor.

[3] This proposition in behalf of the plaintiff is therefore not maintainable; but the contract of September 14, 1905, signed by the defendant John C. Cobb, contained the following express pr⸱ ⸱sion:

"It is also stipulated that said bank may, at any time, in such manner and upon such terms as it may see fit, extend the time and alter the manner for the payment of said indebtedness or any part thereof of said Albert W. Cobb and Lawrence, without notice to John C. Cobb, he hereby agreeing beforehand that no such alteration of time or terms of credit shall in any manner affect the liability of John C. Cobb hereunder."

Now, the claim to apply the Illinois statute to this agreement, if successful, would cut this part up by the roots; and it must be conceded that the statute yields to the contract as it exists, so that, by virtue of the plain letter of the contract, the statute cannot be used to require the plaintiff to bring a suit at any specific time in direct contravention of the obligation which itself provides that the plaintiff might give the principal obligor any time it saw fit, and might also renew this grace or favor from time to time. This proposition is so plain that it requires no argumentation.

No answer to this could be suggested unless it is that the statute represents a public policy, which would contravene provisions to which the parties had all agreed, and annul them notwithstanding the common agreement. No decision of the courts of Illinois has been cited to us indicating that the statute represents any public policy in this direction; and no reason can be suggested for sustaining any such proposition. Possibly it might be supposed that the statute would stand in the way of permitting any supervening contract altering the original terms in this respect; but it is beyond conception to accept

the position that the statute necessarily interferes with what was incorporated in the original agreement made between the parties. Therefore we are clear that, so far as this is concerned, the defense is not sustained.

In reaching the construction we have reached of the Illinois statute with reference to any supposed distinction between the word "surety" and the word "guarantor," the District Court considered thoroughly Ross v. Jones, 22 Wall. 576, 22 L. Ed. 730, and pointed out that it related to the ordinary indorser of commercial paper, and that his indorsement was not affected by the statute of Arkansas, like that of Illinois at bar. There can be no question that the views of the learned judge of the District Court in that respect were correct; but all through the opinion of the Supreme Court there runs a suggestion which sustains our proposition that an original stipulation in a contract of suretyship inconsistent with the terms of the statute avoids the latter. It follows from what was said in Ross v. Jones that the implied agreement of the indorser was inconsistent with the provisions of the statute referred to. This is reflected in sundry ways, but especially by the following, referring to a notice given under the statute, appearing in 22 Wall. on page 587, 22 L. Ed. 730:

"Based on these facts, the second defense set up is that the indorser was discharged by the neglect of the holders of the note to comply with the terms of that notice, which must depend in a great measure upon the nature of the obligation that the indorser assumed by his contract of indorsement."

This means that, by the nature of the obligation imposed by the indorsement, certain terms as to notice were incorporated which were other than those contemplated by the statute. This is enough to point out that such a statute cannot stand with a stipulation for giving time which we have pointed out exists here, any more than it can stand with the inconsistent stipulations involved in the implied obligation assumed by the indorser of commercial paper.

[4] Another defense made in part at least to the suit is that the plaintiff received as additional collateral security a certain promissory note secured by a trust deed of real estate, and that it failed to foreclose the title under the trust deed, and failed to pay certain taxes assessed on the real estate, for which the latter was ultimately sold. The law in reference to this topic is not in any degree so radical as claimed by the defendant. This is illustrated by the principal case on which the defendant relies, namely, City Bank v. Young, 43 N. H. 457 (1862), and the authorities there cited. In that case the creditor was not merely inactive with reference to the collateral, but undertook to dispose of it, and hence was chargeable for his active negligence in so doing. Some of the modern decisions have laid down loose rules on this topic, but the law has never gone beyond the proposition that the creditor is bound to hold the collateral for the benefit of the surety. It never has gone to the extent of holding that, unless on the rule of equity to which we have referred the debtors first indemnify him and secure the costs of litigation, the creditor may be bound to do what may have been asked of him. The fact that the rule makes some special exceptions, as, for example, with reference to the duty

of a holder of collateral negotiable paper on which there is an indorser, to make the usual demand and give the usual notice necessary to hold the indorser, as we held in Carpenter v. Shawmut National Bank, 187 Fed. 1, 5, 109 C. C. A. 55, is not important.

[5] There is some difficulty on this record in disposing satisfactorily of this particular question. Sections 649 and 700 of the Revised Statutes (U. S. Comp. St. 1901, pp. 525, 570) provide for general and special findings in cases where a jury trial is waived; and, according to the settled practice, they admit of no appeal on any question except those which arise in the progress of the trial, as, for example, objections to admission of material evidence, or which would arise on general demurrer, or may be taken as questions of law arising on findings of ultimate facts. The record in this case was made up apparently overlooking these settled rules; and it is brought before us on usual bills of exception, such as are filed in cases of jury trials. There is no formal finding of the ultimate facts so far as the main question in the case is concerned; but those facts appear plainly of record, and therefore have been disposed of by us without any trouble. With reference to this particular question we have been obliged to search out the record page after page; and we cannot be sure that we have everything brought properly before us that was intended to be so brought. There is in the record an opinion of the learned judge of the District Court dealing with various facts in the case; and the plaintiff's bill of exceptions, allowed by the court and especially assented to by the counsel for the defendant, contains the following:

"On August 7, 1912, an opinion was filed by Dodge, J., in which various facts were found and rulings made. This may be referred to."

Ordinarily, an opinion is no part of the record, and is not to be referred to except to indicate the views of the law of the judge of the trial court. Probably, however, this enables us to ascertain the facts as to the point we are now considering, in connection with the like statement which appears in the defendant's bill of exceptions, also assented to by the attorneys for the plaintiff. If not so, then we can take no cognizance of the point of defense which we are now considering. The opinion of the learned judge says as follows:

"I am of the opinion that the defendant's contract was not such in its terms as to give him the right to expect the plaintiff either to expend money or take any active measures regarding the collateral."

The bill of exceptions says that there was a tax sale of the property held under the trust deed, and that the plaintiff received notice of this sale on May 7, 1908, and promptly notified the defendant that it had received this notice; that the right to redeem did not expire until August 17, 1908, and that there was sufficient time between May 7th and August 17th to permit the plaintiff to foreclose the mortgage or to sell the collateral note with the security held by it; and that the defendant had sufficient time during this period within which to pay the tax and redeem the land. There are some further statements contained in the bill of exceptions which we need not recite, because we have recited enough to show that, whatever opportunity the plaintiff

may have had with reference to the collateral note and the land securing it, the defendant had all the same knowledge and the same opportunities. Therefore it is plain that, if there was any default on the part of any one, it was on the part of the defendant instead of on the part of the bank, as it was the primary duty of the defendant to look after the collateral, while at the best it was only a secondary duty, so far as it rested on the plaintiff. Therefore we must hold that, so far as this part of the case is concerned, we have no cognizance over it, or, if we have cognizance in reference thereto, we must find for the plaintiff.

The judgment of the District Court is reversed, and the case is remanded to that court, with directions to enter a judgment for the plaintiff, the Continental & Commercial National Bank of Chicago, for the amount appearing unpaid on the note, with interest at 5 per cent. per annum, and for the costs of that court and of appeal.