No. 2--07--0045        Filed:  11-4-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, N.A., as Successor by Merger to Bank One, N.A., | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--AR--1003 |
| EARTH FOODS, INC., MICHAEL JARVIS, and THEODORE L. PETROVICH, | ) ) ) | |
| Defendants | ) ) | Honorable F. Keith Brown, |
| (Leonard S. DeFranco, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant Leonard S. DeFranco appeals the trial court's order denying his motion to dismiss and granting summary judgment against him and in favor of plaintiff, JP Morgan Chase Bank, on plaintiff's suit to recover from defendant as a guarantor of a defaulted loan.  On appeal, defendant argues that the trial court should have entered judgment in his favor based on section 1 of the Sureties Act (Act) (740 ILCS 155/1 (West 2004)), that the trial court should have ruled in his favor as a sanction for plaintiff's discovery violations, and that an order the trial court entered nunc pro tunc to correct its original order should be considered invalid.  For the reasons that follow, we affirm the decision of the trial court in part, reverse in part, and remand for further proceedings.

The parties do not dispute the basic facts underlying this case. In 2001, plaintiff extended a line of credit to Earth Foods, Inc. (Earth Foods), and the three co-owners of Earth Foods (defendant, Michael Jarvis, and Theodore Petrowich) all personally guaranteed the loan. Before plaintiff sent Earth Foods a notice of default, defendant sent plaintiff a letter that warned it that Earth Foods was depleting its inventory (which was to serve as collateral for the loan) and demanded that plaintiff take action.

Earth Foods stopped making payments to plaintiff in February 2004, and plaintiff sent a notice of default and demand for payment on April 23, 2004. Earth Foods failed to make any payments after the demand. On May 6, 2004, the largest shareholder of Earth Foods (a person who acquired the interest of one of the three co-owners and is not a party to this appeal) transferred all of the assets of Earth Foods to a new company. On June 9, 2004, plaintiff filed suit against Earth Foods as well as the three co-owners who had guaranteed the note.

Defendant's answer claimed an affirmative defense on the ground that he was protected under section 1 of the Act. The matter was eventually set for arbitration on April 26, 2006. However, on the day of the hearing, plaintiff advised defendant that a witness, whom defendant intended to call as an adverse witness, was no longer in plaintiff's employ and therefore was not present at the hearing. Another witness defendant sought to question was also absent. The arbitrator continued the hearing.

In the meantime, on May 4, plaintiff filed a motion for summary judgment against defendant. The motion included an affidavit from one of plaintiff's employees who attested that plaintiff had incurred $64,826 in damages (including attorney fees, costs, and the principal and interest on the note) as of May 3, 2006. (With its reply to defendant's response, plaintiff included a petition

detailing damages of $70,485 as of November 1, 2006.) Defendant responded with a motion to strike plaintiff's motion and to strike plaintiff's complaint, as sanctions for plaintiff's alleged discovery violations in failing to produce witnesses for the scheduled April 26 arbitration hearing (and also for failing to provide an address for the witness no longer employed by plaintiff). The trial court thereafter entered an order stating in pertinent part that "[t]he motion to strike the motion for summary judgment is denied in part, the motion to dismiss the complaint included in said motion is reserved." The record contains no further ruling on the motion to dismiss the complaint.

On December 19, 2006, the trial court granted plaintiff's motion for summary judgment on the ground that defendant was a guarantor, not a surety, and thus the Act did not apply. The motion for summary judgment was thus "granted *** in the amount of $42,056.43 as of September 30, 2005, [sic] as set forth in the Affidavit *** filed in support of this Motion plus interest, attorneys fees and costs accruing after that date." The trial court added, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), that there was no reason to delay appeal in the matter.

On January 9, 2007, defendant filed a notice of appeal. Later that same day, plaintiff filed a "Motion to Modify Order Dated December 19, 2006 Nunc Pro Tunc." Plaintiff asserted that the trial court erroneously entered judgment based on the amount of damages described in plaintiff's initial motion for summary judgment instead of the updated amount contained in plaintiff's reply. On January 19, the trial court entered an order stating that the December 19 order contained a clerical error to be "amended, nunc pro tunc, to provide that judgment is entered in favor of plaintiff in the amount of $73,478.51." We later granted defendant's motion to amend his notice of appeal to incorporate this January 19 order.

Defendant's first argument on appeal is that the trial court erred in entering summary judgment in favor of plaintiff, because defendant was protected by section 1 of the Act. Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2004). The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, but, because it is a drastic means of disposing of litigation, it should be used only when the right of the moving party is clear and free from doubt. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). A reviewing court considers a challenge to the propriety of a summary judgment ruling under the nondeferential de novo standard of review. Adams, 211 Ill. 2d at 43.

Defendant argues that the Act applies here, even though the contract lists him as a guarantor and not a surety. Plaintiff counters that the Act does not apply because the Act does not apply to guarantors. As this argument hinges on the application of section 1 of the Act, we begin our analysis with that section, which provides as follows:

"When any person is bound, in writing, as surety for another for the payment of money, or the performance of any other contract, apprehends that his principal is likely to become insolvent or to remove himself from the state, without discharging the contract, if a right of action has accrued on the contract, he may, in writing, require the creditor to sue forthwith upon the same; and unless such creditor within a reasonable time and with due diligence, commences an action thereon, and prosecutes the same to final judgment and proceeds with the enforcement thereof, the surety shall be discharged; but no such discharge

shall not [sic] in any case affect the rights of the creditor against the principal debtor." 740 ILCS 155/1 (West 2004).

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. Wisniewski v. Kownacki, 221 Ill. 2d 453, 460 (2006). The most reliable indicator of legislative intent is the language of the statute, which "must be afforded its plain, ordinary, and popularly understood meaning." Alvarez v. Pappas, 229 Ill. 2d 217, 228 (2008). Both parties here rely on the same statutory language--the statute's use of the word "surety"--to support their respective arguments. Defendant argues that the term "surety" includes guarantors, and plaintiff argues that it does not.

Courts often turn to dictionaries to supply the plain and popularly understood meanings of statutory terms (see Alvarez, 229 Ill. 2d at 225). According to Black's Law Dictionary, a "surety" is "[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation." Black's Law Dictionary 1455 (7th ed. 1999). "A surety differs from a guarantor, who is liable to the creditor only if the debtor does not meet the duties owed to the creditor; the surety is directly liable." Black's Law Dictionary 1455 (7th ed. 1999). Thus, the dictionary definition of the word "surety" supports plaintiff's argument that sureties are distinct from guarantors.

However, the dictionary definition does not in this case provide the "popularly understood" meaning of the term. " 'The terms "suretyship" and "guaranty" are often confounded from the fact that the guarantor is in common acceptation a surety for another,' " and thus "[t]he word 'guarantee' is frequently used interchangeably with the word 'surety.' " Vermont Marble Co. v. Bayne, 356 Ill. 127, 131, 132 (1934), quoting 27 Am. & Eng. Ency. of Law 432-33 (2d ed.); see also F. Bae & M.

McGrath, The Rights of a Surety (or Secondary Obligor) Under the Restatement of the Law, Third, Suretyship and Guaranty, 122 Banking L.J. 783, ___ (2005) ("There is still considerable dispute about the distinction between a surety and a guaranty," and "[s]ometimes the words are used interchangeably" (emphases omitted)); Restatement (Third) of Suretyship & Guaranty §1, Comment d, at 77 (1996) ("Sometimes the term 'suretyship' is used narrowly and in contradistinction to 'guaranty,' while, at other times, the term 'suretyship' refers generically to both types of transaction"). Indeed, Illinois cases can be read to use the term "surety" in both its general sense and its specific sense. Thus, a surety has been described in the general sense as a relationship in which a "person undertakes an obligation of another person who is also under an obligation or duty to the creditor/obligee" (Rosewood Care Center, Inc. v. Caterpillar, Inc., 226 Ill. 2d 559, 576 (2007)) or as " 'a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal' " (Chandler v. Maxwell Manor Nursing Home, Inc., 281 Ill. App. 3d 309, 321 (1996), quoting 74 Am. Jur. 2d Suretyship §1, at 12 (1974)). See also Credit General Insurance Co. v. Midwest Indemnity Co., 872 F. Supp. 523, 524-25 (N.D. Ill. 1995) ("A suretyship contract or surety bond is essentially an agreement to satisfy the contractual obligations of another party"). The term has also been defined more specifically as a contract in which the surety " 'is in the first instance answerable for the debt for which he makes himself responsible,' " as opposed to a guarantor, who " 'is only liable where default is made by the party whose undertaking is guaranteed.' " Vermont Marble, 356 Ill. at 132, quoting 27 Am. & Eng. Ency. of Law 432, 433 (2d ed.). Thus, the term "surety" has more than one popularly understood meaning: the word is sometimes used to refer to any situation in which a person agrees to be held

liable for the debt of another, whether the liability is primary as a surety or secondary as a guaranty, and it is sometimes used to refer strictly to a surety who is primarily liable.

A surety's primary liability stems from the idea that "a contract of suretyship is the joint and several contract of the principal and the surety." 38 Am. Jur. 2d Guaranty §12, at 881 (1999). A guarantor, on the other hand, undertakes a contractual obligation separate from the principal's, and thus his liability is secondary to the principal's. 38 Am. Jur. 2d Guaranty §12 (1999).

Although some cases have indicated that a guarantor's secondary liability is triggered only after the creditor has proceeded against the principal and failed to receive full satisfaction,[1] the stronger weight of authority holds that a guarantor's secondary liability is triggered by the principal's default, regardless of whether the creditor makes any attempt thereafter to recover from the principal.[2] (We note that, if the distinction were that guarantors are not liable until after the creditor

---

[1]See Vermont Marble, 356 Ill. at 132, quoting 21 R.C.L. 951 (contrasting a guarantor from a surety, who is obligated " 'to pay, absolutely and wholly, irrespective of his solvency or insolvency, all damages which may result to the obligee from his default, and by which they expressly stipulate that the obligee need not exhaust his remedies against their principal before proceeding against them' "); see also People v. Depositors State Bank, 377 Ill. 602, 606 (1941) (contract that required creditor to exhaust remedies against the principal was a guaranty); Manry v. Waxelbaum Co., 108 Ga. 14, 17-18, 33 S.E. 701, 703 (1899) ("a guarantor warrants nothing but the solvency of the principal," and, "[b]efore an action can be maintained against a guarantor, *** it must be shown that the principal is unable to perform").

[2]See Vermont Marble, 356 Ill. at 132, quoting 27 Am. & Eng. Ency of Law 432, 433 (2d ed.) (" 'a guarantor is only liable where default is made by [the principal]' "); Hensler v. Busey Bank, 231

has sued the principal, the contract in this case, which provides that plaintiff could "proceed against one or more of the undersigned without proceeding against [the principal] or another Guarantor," would either eviscerate the distinction or establish defendant as a surety.)

Because in either case the creditor will have no cause of action until the principal has defaulted, the actual difference between the primary liability of a surety and the secondary liability of a guarantor would at first glance appear to be academic. See Edward Corp. of Miami v. David M. Wollin & Son, Inc., 113 So. 2d 252, 253 (Fla. App.1959) (agreeing with parties that the distinction is academic). Indeed, aside from the parties' status as parties to the original or a collateral contract, the most significant implications of the distinction for our purposes are that (1) some jurisdictions do not allow guarantors, who are not parties to the original contract, to be joined in the creditor's suit against the principal; and (2) guarantors are often entitled to notice of the principal's default. 38 Am. Jur. 2d Guaranty §12 (1999). Beyond those effects, the difference between a surety

---

Ill. App. 3d 920, 927 (1992) ("A guaranty *** is an absolute undertaking imposing liability upon the guarantor immediately upon the default of the principal debtor"); National Bank of Austin v. First Wisconsin National Bank of Milwaukee, 53 Ill. App. 3d 482, 487 (1977) ("the guarantor of the note becomes a debtor when there is a default of the note"); Kreizelman v. Stevens, 311 Ill. App. 161, 168 (1941), quoting 28 C.J. §125, at 972 (" 'a guaranty *** is an absolute undertaking imposing liability upon the guarantor immediately upon the default of the principal debtor' "); 23 R. Lord, Williston on Contracts §61:2 (4th ed. 2002) (stating that, although some authorities refer to a guaranty as an agreement in which the guarantor insures the solvency of the debtor, the correct view is that a guarantor becomes liable upon the principal's failure to perform, not the principal's inability to pay).

and a guarantor (and the difference between their primary and secondary liability) is in fact largely academic, and, likely for that reason (and to avoid the type of confusion we confront here), some jurisdictions have abolished the distinction altogether. See 38 Am. Jur. 2d Guaranty §11 (1999).

The question for us is whether the legislature intended to invoke any of the above distinctions by using the word "surety" in section 1 of the Act, or whether it meant to use the term "surety" in its general sense to describe all of the above situations. Our above discussion indicates that the terms "guarantor" and "surety" are unusually intertwined in legal parlance and that the distinctions between them are arcane and often ignored. In light of the confusion surrounding the term "surety" and its meanings, the legislature's plain use of the word as it appears in section 1 of the Act, unadorned by explanation, definition, or detail, indicates rather strongly to us that the legislature did not mean to draw the type of precise distinctions we discussed above, but instead used the word in its general sense.

That conclusion comports with the purpose of the Act, which was created "to compel diligence by a creditor to make certain a surety is protected against loss." City National Bank of Murphysboro v. Reiman, 236 Ill. App. 3d 1080, 1091 (1992). As defendant notes, it is difficult to conceive how this legislative purpose would be served by extending the protection of section 1 to sureties but not to guarantors. Indeed, the Act's purpose applies with equal force to guarantors as it does to sureties: both sureties and guarantors are, as the statute puts it, "bound" on the obligation of the principal and thus liable for the principal's unpaid debt. As defendant states, "[i]f the statute clearly protects a surety who would otherwise stand liable for the principal, how then could the statute not be intended to protect the guarantor as well, should the guarantor do everything the []surety[] would do?" Given the Act's purpose, which applies to sureties and guarantors alike, and

given the exceptionally close relationship between those two terms, we agree with defendant's position that the legislature must have intended the word "surety" in the Act to encompass a guarantor.

We find support for our interpretation in a decision from the First Circuit of the United States Court of Appeals, which has interpreted the Act in the way defendant urges. See Continental & Commercial National Bank, Chicago, v. Cobb, 200 F. 511 (1st Cir. 1912). In Cobb, the defendant invoked section 1 of the Act (which had the same relevant language then as now) for protection against the plaintiff's action for an unpaid debt the defendant had guaranteed. Cobb, 200 F. at 513-14, quoting Ill. Rev. Stat. 1911, ch. 132, par. 1. The plaintiff argued that "the statute [had] relation only to sureties in the special sense of the word [and] that the defendant *** [was] a guarantor." Cobb, 200 F. at 515. The First Circuit disagreed:

> "This is altogether too narrow a construction of a remedial statute to meet the approval of any court of justice. The word 'surety' is a generic word, while 'guaranty' is specific. Guarantors have certain specific protected rights which other sureties do not have, but they are entitled to every equitable right of protection which any surety has." Cobb, 200 F. at 515.

Plaintiff argues that we should ignore Cobb because "[a]ppellate court decisions issued prior to 1935 have no binding authority." Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 95 (1996). It is indeed quite true that decisions of the Illinois Appellate Court prior to 1935 are not binding authority, because those cases predate an amendment to the Courts Act that conferred precedential authority to Illinois Appellate Court decisions. See Chicago Title & Trust Co. v. Vance, 175 Ill. App. 3d 600, 606 (1988), citing Ill. Rev. Stat. 1935, ch. 37, par. 41. However, that rule has no application here, because Cobb is a decision from the First Circuit of the United States Court of

Appeals, not the Illinois Appellate Court. Plaintiff further asserts that Cobb is not helpful because "at no point throughout the case is the Act ever referenced or made mention of." In response to this argument, we can only refer plaintiff to page 514 of Cobb, which quotes section 1 of the Act in its entirety before applying it as we described above. Finally, plaintiff argues that we should not follow Cobb because it is "outdated." We see no indication that Cobb has been overruled, and a case's age is alone no reason to ignore it. The discussion in Cobb accords with our analysis of this issue above, and we deem it persuasive authority. Cf. Zahl v. Krupa, 365 Ill. App. 3d 653, 662 (2006) (on matters of state law, federal cases are not binding on Illinois courts, but federal cases can act as persuasive authority).[3]

Based on the above discussion, we conclude that the term "surety," as used in section 1 of the Act, encompasses both an agreement in which a person agrees to be held primarily liable for the debt of another (strictly speaking, a surety), and an agreement in which a person agrees to be held secondarily liable for the debt of another (strictly speaking, a guaranty). We therefore hold that the trial court erred in granting plaintiff summary judgment on the ground that defendant could not seek refuge in section 1 of the Act because he was a guarantor.

By this decision, however, we do not mean to imply that defendant is necessarily covered by section 1 of the Act. In presenting their cases to the trial court, the parties disputed whether defendant had satisfied the timing requirements set forth in section 1 of the Act, which requires that

---

[3]Though neither party directs us to any foreign authority beyond Cobb, we note that our interpretation puts us at odds with Ohio courts' interpretation of a similar statute, in Ohio Savings Ass'n v. Cortell, 24 Ohio App. 3d 234, 495 N.E.2d 33 (1985), and Galloway v. Barnesville Loan, Inc., 74 Ohio App. 23, 57 N.E.2d 337 (1943).

the surety's written notification to the creditor be sent "if a right of action has accrued on the contract." 740 ILCS 155/1 (West 2004). The parties have not argued this question to us on appeal, and we therefore express no opinion on it or any other question regarding the applicability of the Act not addressed in this decision. Our opinion today is confined to the issue of whether guarantors may be covered under section 1 of the Act.

Though we agree with defendant's first argument on appeal, his remaining arguments do not become moot, because his second argument asks that we require sanctions to be imposed against plaintiff, and his third argument indirectly challenges our jurisdiction. We therefore address defendant's remaining arguments.

Defendant's second argument is that the trial court should have stricken plaintiff's summary judgment motion or its complaint as a sanction for plaintiff's failure to produce certain witnesses at the arbitration hearing. Defendant directs us to Supreme Court Rule 237(b) (210 Ill. 2d R. 237(b)), which requires that, upon notice, a party produce its employees to testify. Rule 237(b) states that, in response to a party's failure to comply with the rule, a "court may enter any order that is just, including any sanction or remedy provided for in Rule 219(c)." 210 Ill. 2d R. 237(b). Defendant argues that striking plaintiff's complaint or motion for summary judgment is an appropriate sanction under both Rule 237(b) and Rule 219(c). We disagree.

Although the record does not contain an explicit ruling from the trial court on defendant's sanctions motion, we infer based on the trial court's eventual entry of judgment in plaintiff's favor that the trial court denied defendant's motion for sanctions. A trial court's decision regarding sanctions will not be disturbed on appeal absent an abuse of the trial court's discretion. State Farm Mutual Insurance Co. v. Santiago, 344 Ill. App. 3d 1010, 1013 (2003); see also Boyd v. City of

Chicago, 378 Ill. App. 3d 57, 68 (2007) (trial court's decision to impose sanctions under Rule 219 reviewed for abuse of discretion). "An abuse of discretion occurs when the court's ruling is arbitrary or exceeds the bounds of reason." Santiago, 344 Ill. App. 3d at 1013.

Defendant offers little to establish an abuse of discretion by the trial court. He notes that he was ready to proceed at the scheduled arbitration hearing but was forced to accept a continuance instead of being allowed to prosecute the hearing with his opponent sanctioned for failing to produce the witnesses. However, defendant does not explain why the decision to continue the hearing so that all witnesses could be produced was an unreasonable one. Nor does he explain why the trial court should have imposed the drastic remedy he now seeks when there has been no showing that plaintiff's violations (if indeed plaintiff's actions constituted violations) prevented the parties from fairly litigating either the summary judgment motion or the case as a whole. Given the strong deference accorded the trial court on decisions regarding sanctions, along with the lack of justification for the remedy defendant now advocates, we see no grounds for overturning the trial court's decision here.

Defendant's final argument is that the trial court's January 19 order was invalid, because it came after defendant's timely notice of appeal divested the trial court of jurisdiction over the cause. On this argument, the parties devote their attention to the question of whether the trial court's January 19 order actually nunc pro tunc corrected a clerical error or whether the order constituted a substantive reconsideration after defendant's notice of appeal had been filed. However, we need not address this issue, because, even accepting defendant's argument that plaintiff's motion to modify the trial court's order nunc pro tunc was actually a postjudgment motion challenging the trial court's judgment, we would deem the trial court's January 19 order valid. Defendant is correct when he cites

-13-

the general rule that a trial court is divested of jurisdiction over a cause upon the filing of a notice of appeal. See, e.g., Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo, 357 Ill. App. 3d 122, 141 (2005). However, the newly amended version of Supreme Court Rule 303(a)(2) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007), which governs the time for appeals under Rule 304(a) (see 210 Ill. 2d R. 304(a)), and which applies retroactively to this appeal (see In re Marriage of Duggan, 376 Ill. App. 3d 725, 728-34 (2007)), provides a specific rule that governs here:

> "When a timely postjudgment motion has been filed by any party *** a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion *** becomes effective when the order disposing of said motion *** is entered." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007.

This amended rule replaced the old rule, which dictated that a timely postjudgment motion filed after a notice of appeal would cause the notice of appeal to "have no effect" and to be "withdrawn." 155 Ill. 2d R. 303(a)(2); see John G. Phillips & Associates v. Brown, 197 Ill. 2d 337, 343 (2001).

Neither party disputes that plaintiff's January 9 postjudgment motion was timely filed. See 735 ILCS 5/2--1301(e) (West 2004) (postjudgment motions may be filed within 30 days of final judgment); see also Brown, 197 Ill. 2d at 343 (relying on same provision and previous version of Rule 303(a)(2) to hold that a court may consider a timely postjudgment motion filed after a notice of appeal). Therefore, because plaintiff filed a timely postjudgment motion, the previously filed notice of appeal became effective on January 19, after the trial court ruled on that postjudgment motion. Accordingly, even if the trial court's January 19 order was, as defendant asserts, a substantive reconsideration of its previous order, the order was valid under Rule 303(a)(2).

For the foregoing reasons, we reverse the judgment of the circuit court of Kane County and remand the cause for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and SCHOSTOK, JJ., concur.