**In re Barry B. KREISLER, Debtor.**

**No. 02 B 21934.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 13, 2009.

Allen C. Wesolowski, Esq., Chicago, IL, for Claimant.

Catherine L. Steege, Esq., Chicago, IL, for Objector, Trustee.

David H. Hixson, Esq., Chicago, IL, for Objector.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the objection to Claim Number 68 (the "Claim") filed by Catherine L. Steege (the "Trustee"), not individually, but as Trustee for the bankruptcy estate of Barry B. Kreisler (the "Debtor"). The First Commercial Bank ("First Commercial") filed the Claim and responded in opposition to the Trustee's objection. For the reasons set forth herein, the Court sustains the Trustee's objection and disallows First Commercial's Claim.

### I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

### II. *FACTS AND BACKGROUND*

On June 5, 2002, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 25, 2002, the Court entered an order converting the Debtor's case to Chapter 7. The following day, the United States Trustee appointed the Trustee.

On September 30, 2002, First Commercial filed its Claim as a general unsecured claim in the amount of $205,972.40. In

support of its Claim, First Commercial attached two documents, both dated June 17, 1997. The first document is titled "Adjustable Rate Installment Note" (the "Note"). Pursuant to the Note, First Commercial loaned $230,000 to Devon Bank as trustee under a trust agreement dated December 1, 1994 and known as trust number 6171. The Note claims to be secured by a separate mortgage, certain personalty and fixtures, and an assignment of rents. The Note provides that upon a specified event of default, First Commercial would be entitled to foreclose on the mortgage and pursue any other legal remedies provided by the mortgage.

The second document attached to First Commercial's Claim is entitled "Guarantee," in which the Debtor guaranteed the amounts due to First Commercial under the terms of the Note. The Guarantee provides as follows in relevant part:

1. [T]he Guarantor guarantees that [Devon Bank] will promptly pay the full amount of principal and interest of said note as and when the same shall in any manner be or become due, either according to the terms and conditions provided in said note or upon acceleration of the payment thereof by reason of a default, as a primary and not a secondary liability of Guarantor.

2. Without limiting the generality of the foregoing, the Guarantor agrees that Guarantor will pay the full amount of principal and interest of said note now or hereafter due as and when the same shall in any manner be or become due, either according to the terms and conditions provided in said note or upon acceleration of the payment thereof by reason of a default, as a primary and not secondary liability of Guarantor.

12. Lender may, at its option, proceed in the first instance against the Guarantor to collect the obligations covered by this Guarantee without first proceeding against any other person, firm or corporation, and without resorting to any property held by Lender as collateral security.

On January 16, 2009, the Trustee filed an objection seeking to disallow First Commercial's Claim, in full, on the grounds that the Debtor had no liability under the Note. On February 24, 2009, First Commercial filed its response, in which it provided that the maturity date on the Note is January 1, 2018, and that the current principal balance of the Note is $137,513.44.

The Trustee filed a reply on March 18, 2009, and based on the representations made by First Commercial in its response, requested that the Court estimate First Commercial's Claim at zero dollars pursuant to 11 U.S.C. § 502(c). The Trustee argues that because Devon Bank, the principal under the Note, tendered consistent payments to First Commercial under the terms of the Note, the Claim is both contingent and unliquidated. In a sur-reply, First Commercial denies such a position and maintains that the Debtor's Guarantee is actually a suretyship under Illinois state law. The Trustee filed the final sur-reply in response to First Commercial's discussion of Illinois suretyship law. In sum, the Trustee asserts that First Commercial confuses basic fundamentals of Illinois suretyship law. Based on the filings in this matter, the issues before the Court are whether the Debtor is a surety or guarantor under Illinois contract law; whether First Commercial's Claim is contingent upon Devon Bank defaulting under the terms of the Note; and whether estimating First Commercial's Claim pursuant to § 502(c) is appropriate.

### III. APPLICABLE STANDARDS

11 U.S.C. § 502 governs the allowance of claims or interests in a bankruptcy case.

Claims filed in a bankruptcy case are prima facie presumed valid under § 502(a) and are prima facie proof of their validity under Federal Rule of Bankruptcy Procedure 3001(f). *Conn. Gen. Life Ins. Co. v. Schaumburg Hotel Owner Ltd. P'ship (In re Schaumburg Hotel Owner Ltd. P'ship),* 97 B.R. 943, 950 (Bankr.N.D.Ill.1989). Specifically, Bankruptcy Rule 3001(f) provides, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR.P. 3001(f); *see also In re Salem,* 465 F.3d 767, 779 (7th Cir.2006). Generally, a claim is deemed allowed unless a party in interest objects. *See id.*

 Claim objectors carry the initial burden to produce some evidence to overcome this rebuttable presumption. *In re O'Malley,* 252 B.R. 451, 455–56 (Bankr. N.D.Ill.1999). The evidence set forth by the objecting party must be of a probative force equal to that of the allegations asserted in the claim. *Surf Walk Condo. Ass'n v. Wildman,* 84 B.R. 511, 515 (N.D.Ill.1988). "Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." *O'Malley,* 252 B.R. at 456. However, the ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim. *In re Nejedlo,* 324 B.R. 697, 699 (Bankr.E.D.Wis.2005); *In re Octagon Roofing,* 156 B.R. 214, 218 (Bankr. N.D.Ill.1993); *Schaumburg Hotel,* 97 B.R. at 950. As the objecting party, the Trustee carries the initial burden to overcome the rebuttable presumption that First Commercial has a valid claim against the Debtor's estate. In the instant matter, the parties waived their opportunity for an evidentiary hearing and chose to rest on the papers filed with the Court.

## IV. DISCUSSION

### A. The Trustee's Objection to First Commercial's Claim is Sustained

The Court has reviewed First Commercial's Claim and determines that it constitutes prima facie evidence of the validity and amount of the claim. *See In re McCoy,* 355 B.R. 69, 72 (Bankr.N.D.Ill. 2006). Based upon the applicable standards stated *supra,* the Trustee, as objector, has the burden of presenting evidence to rebut the Claim's prima facie validity. *Id.* The Trustee has objected to First Commercial's Claim on the grounds that the Claim is contingent, unliquidated, and First Commercial does not have appropriate standing under Illinois state law to assert the Claim as of the Debtor's petition date.

 Generally, a "claim," as defined by the Bankruptcy Code, includes the "right to payment, whether or not such right is … unliquidated … [or] contingent. . . ." 11 U.S.C. § 101(5)(A). While "contingent" and "unliquidated" have been left undefined by the Code, the concepts connected to these two type of claims "are interrelated but not interchangeable." *In re Orseno,* 390 B.R. 350, 354 (Bankr. N.D.Ill.2008). Courts in this jurisdiction have determined that a contingent claim has been defined as a claim which has not yet accrued and which is dependent upon some future event, an event that may in fact never happen. *Ayres v. Dev. Specialists, Inc. (In re Altheimer & Gray),* 393 B.R. 603, 610 (N.D.Ill.2008) (*quoting McCoy,* 355 B.R. at 75); *Lousberg, Kopp, Kutsunis & Weng, P.C. v. Bonnett (In re Bonnett),* 158 B.R. 125, 127 (Bankr.C.D.Ill. 1993); *Covey v. Hackett (In re Roadrunner Delivery, Inc.),* No. 07–80773, Adv. No.

07–8113, 2007 WL 4553068, at *4 n. 3 (Bankr.C.D.Ill. Dec. 19, 2007). Additionally, courts in this jurisdiction have determined that a claim is "unliquidated" when the discretion or judgment of the court is required to determine the amount of the claim. *Orseno*, 390 B.R. at 354; *First Nat'l Bank Co. of Clinton, Ill. v. Ins. Co. of N. Am.*, 606 F.2d 760, 769–70 (7th Cir. 1979).

■ In the instant case, First Commercial's Claim may appear to be unliquidated and within the discretion of the Court to determine. However, the Code provides guidance for the Court to determine and set the amount of First Commercial's Claim as of the petition date. Section 502(b) specifically provides, "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition. . . ." 11 U.S.C. § 502(b). Additionally, the discretion afforded to courts in determining an unliquidated claim has been understood as requiring a bankruptcy judge to set the value of a creditor's claim as of the petition date. *See In re Aaura, Inc.*, No. 06–B–01853, 2006 WL 2568048, at *5 (Bankr.N.D.Ill. Sept. 1, 2006).

■ It is clear that First Commercial's Claim would be easily determined if the Debtor was the primary obligor or principal under the Note. However, the value or amount of First Commercial's Claim, if any at all, against the Debtor, as of the petition date, hinges on the nature of the Guarantee. First Commercial's Claim provides that it is unsecured and that the value or amount outstanding under the Note is $205,972.40 when it filed its Claim on September 30, 2002. This is the amount, however, that was due under the terms of the Note executed by Devon Bank. The amount was payable by Devon Bank, as maker of the Note, not the Debt-

or. The value of the Claim, to the extent that First Commercial can assert a claim against the Debtor, can be determined by reviewing whether First Commercial had a legal, actionable right to payment of the debt due under the Note from the Debtor on the petition date. *See* 11 U.S.C. § 101(5). In order to have a valid claim, First Commercial must demonstrate that its Claim is enforceable against the Debtor under applicable Illinois law. *See* 11 U.S.C. § 502(b)(1) ("the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor . . . under any agreement or applicable law. . . .").

Therefore, the Court must analyze the Guarantee in conjunction with Illinois guaranty and suretyship law. In light of the Trustee's objection, the Court must specifically determine whether the Debtor is a guarantor or a surety under Illinois law; and whether, as a result of the Debtor's legal standing under the Guarantee, First Commercial has an allowable claim against the Debtor as of the petition date.

The terms "guarantor" and "surety" are frequently used interchangeably, as are "principal" and "primary." *Qualkenbush v. Harris Trust & Savs. Bank*, 219 F.Supp.2d 935, 938 (N.D.Ill.2002). "The fact that there are so many different terms that can apply to one in [the Debtor's] position—one who accepts some level of responsibility for another's debt—often results in ambiguity." *Id.* In order to understand the implications of First Commercial's Claim, a basic understanding of the differences and similarities between a guarantor and a surety must be understood.

Generally, a "guaranty is a classic example of a contingent obligation." *In re Fox,* 64 B.R. 148, 153 (Bankr. N.D.Ohio 1986). In order for a guarantor to be liable for the debts of a third party debtor, the third party debtor, or principal under the terms of the note, would have to be in default. *See Trossman v. Philipsborn,* 373 Ill.App.3d 1020, 312 Ill.Dec. 156, 869 N.E.2d 1147, 1168 (2007); *see also In re All Media Props., Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981). A guarantor undertakes a contractual obligation separate from the principal's obligation and, thus, his liability is secondary to the liability of the principal. *JP Morgan Chase Bank, N.A. v. Earth Foods, Inc.,* 386 Ill.App.3d 316, 325 Ill.Dec. 671, 898 N.E.2d 718, 723 (2008). With regard to the Note at bar, the Debtor signed as a guarantor under the Guarantee, not as a surety.

A surety, on the other hand, is obligated "to pay, absolutely and wholly, irrespective of his solvency or insolvency, all damages which may result to the obligee from his default, and by which they expressly stipulate that the obligee need not exhaust his remedies against their principal before proceeding against them...." *Vermont Marble Co. v. Bayne,* 356 Ill. 127, 190 N.E. 291, 293–94 (1934). The definition of surety is difficult to discern in some manner. Illinois cases can be read to use the term "surety" in both its general sense (which would include a guarantor) and its specific sense. From a larger point of view, a surety generally "undertakes an obligation of another person who is also under an obligation or duty to the creditor/obligee." *Rosewood Care Ctr., Inc. v. Caterpillar, Inc.,* 226 Ill.2d 559, 315 Ill.Dec. 762, 877 N.E.2d 1091, 1100–01 (2007). Phrased a different way, a surety is in a "contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal." *Chandler v. Maxwell Manor Nursing Home, Inc.,* 281 Ill. App.3d 309, 217 Ill.Dec. 71, 666 N.E.2d 740, 749 (1996) (internal quotation omitted). More specifically, a surety enters into a contract and "is in the first instance answerable for the debt for which he makes himself responsible." *Earth Foods,* 325 Ill.Dec. 671, 898 N.E.2d at 723 (internal quotation omitted).

Paragraph 12 of the Guarantee at bar arguably allows First Commercial to proceed against the Debtor in the first instance without proceeding against Devon Bank. Thus, First Commercial contends that the Debtor was really a surety and not a guarantor. First Commercial asserts that the Guarantee actually renders the Debtor as a surety with primary liability for the debt owed under the Note. It asserts that the plain language of the Guarantee establishes that the Debtor is a surety. The Court does not agree. The document ways guarantee, not surety. As a surety, the Debtor in this instant, sits in a different position from a guarantor. However, First Commercial's attempt to liken the position of the Debtor, as a surety, to that of a co-obligor is misplaced for the following reason.

Whether the Debtor is a guarantor, that is secondarily liable under the terms of the Note, or a surety that is primarily liable, First Commercial "will have no cause of action [against the Debtor] until the principal has defaulted...." *See Earth Foods,* 325 Ill.Dec. 671, 898 N.E.2d at 724. Although First Commercial attempts to draw a significant line between a surety and a guarantor, for the most part, the differences between the two legal relationships are merely academic. *See id.* ("[A]side from the parties' status as parties to the original or a collateral

contract, the most significant implications of the distinction [between a guarantor and surety] ... are that (1) some jurisdictions do not allow guarantors, who are not parties to the original contract, to be joined in the creditor's suit against the principal; and (2) guarantors are often entitled to notice of the principal's default."). The Trustee correctly notes that Illinois courts have long recognized that a "surety is generally not liable on his undertaking unless his principal is liable *and in default* on the underlying debt." *First Arlington Nat'l Bank v. Stathis*, 90 Ill.App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288, 1294 (1980) (internal quotation omitted) (emphasis supplied). This is critical and outcome determinative for this matter.

■ Thus, even though the Debtor can be viewed as having primary liability, First Commercial cannot maintain its Claim against the Debtor and the bankruptcy estate until there has been a default under the Note. Devon Bank, the principal under the Note, has not defaulted. In fact, it is undisputed that since the filing of First Commercial's Claim, Devon Bank has continued to make the routine payments due under the terms of the Note. As of February 24, 2009, the date of First Commercial's response, the principal balance due under the Note has been reduced to $137,513.44. Accordingly, based on the foregoing, First Commercial's Claim is disallowed as to the Debtor and the bankruptcy estate in its entirety as of the date of the petition.

First Commercial, however, is not without recourse against the Debtor in the event that Devon Bank defaults under the Note. Section 502(j) of the Code allows First Commercial to have its Claim "reconsidered for cause." 11 U.S.C. § 502(j). Specifically, § 502(j) provides that a "reconsidered claim may be allowed or disallowed according to the equities of the case." *Id.* First Commercial should keep this section of the Bankruptcy Code in consideration as Devon Bank continues to serve as the principal and payor under the Note, and this case continues while the Trustee proceeds to administer the bankruptcy estate and pay allowed claims.

## B. Estimating the Value of First Commercial's Claim is Inappropriate Based on the Lack of Evidence Presented by the Parties

The Trustee sought alternative relief in the event that the Court finds that First Commercial had a valid claim against the Debtor's estate. In this regard, the Trustee asks the Court to estimate the value of the Claim pursuant to § 502(c) for purposes of allowing the claim. Section 502(c) provides in pertinent part that "[t]here shall be estimated for purpose of allowance ... any contingent or unliquidated claim, the fixing or liquidation of which ... would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).

■ This section of the Code serves at least two purposes. *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir.1992). First, it avoids the need to await the resolution of pending lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of theses actions. *Id.* Second, it promotes a fair distribution to creditors through a realistic assessment of uncertain claims. *Id.* The Trustee has sought this separate and alternative relief based upon the unliquidated and contingent nature of First Commercial's Claim.

■ Generally, courts have wide discretion in determining the method by which to estimate contingent or unliquidated claims pursuant to § 502(c). *Aaura*, 2006 WL 2568048, at *5. In this regard,

 

neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide any procedures or guidelines for estimation of claims. *In re Chavez*, 381 B.R. 582, 587 (Bankr.E.D.N.Y.2008). The general rule that has won the day is that the bankruptcy court should use whatever method is best suited to the particular circumstances at issue. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 356 (3d Cir.2002); *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir.1982); *Colo. Mountain Express, Inc. v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv., Inc.)*, 193 B.R. 325, 337 (D.Colo.1996).

In the instant case, the parties failed to submit any evidence, other than the attachments to their respective pleadings. Further, the filed papers do not assist the Court with estimation of First Commercial's Claim. There is no evidence to indicate any likelihood that Devon Bank may default in payments on the Note any time in the future, while the estate remains open. In order to proceed under § 502(c), the Court would need evidence to analyze; namely, evidence estimating some likelihood of whether Devon Bank will default under the terms of the Note in the future. In short, the Court refuses to enter into a hypothetical analysis to estimate the value of First Commercial's Claim without solid facts.

## V. *CONCLUSION*

For the foregoing reasons, the Court sustains the Trustee's objection to First Commercial's Claim and disallows the Claim.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.