(No. 22092.—)

THE VERMONT MARBLE COMPANY, Plaintiff in Error, *vs.*
GEORGE G. BAYNE *et al.* Defendants in Error.

*Opinion filed April 21, 1934.*

BANGS, CRANE & SLATER, (DRENNAN J. SLATER, of
counsel,) for plaintiff in error.

GUMBART & GRIGSBY, CHIPERFIELD & CHIPERFIELD, GEORGE A. FALDER, and WALKER & O'HARRA, for defendants in error.

Per CURIAM: The Vermont Marble Company, plaintiff in error, (hereinafter called plaintiff,) instituted suit in the circuit court of McDonough county against defendants in error, (hereinafter called defendants,) as sureties on a contract between plaintiff and the American Mausoleum Company. The trial court sustained the demurrer of defendants to the amended declaration and entered judgment for them. This judgment was affirmed by the Appellate Court for the Third District, and the cause comes here by *certiorari.*

The allegations of the amended declaration, so far as now important, were as follows: On May 10, 1926, plaintiff entered into a written agreement in Chicago with the American Mausoleum Company of Macomb, Illinois, by which plaintiff agreed to furnish marble for the Community Mausoleum Building at Clinton, Illinois, as specified in certain drawings, for the sum of $4350. A copy of this agreement is set forth in the declaration. In order to induce plaintiff to enter into and perform that agreement, defendants Bayne, Wetzel and Carson, and also one Elting, on the same day entered into and signed the following agreement:

"For value received, and as an inducement to Vermont Marble Company to make this contract, the undersigned hereby becomes surety for the full payment and faithful performance of said contract by the purchaser, according to the terms thereof, and waives notice of any additions to or deductions from said contract in accordance with the terms thereof, and also notice of defaults, and consents that the company may waive defaults and grant extensions of time without notice and without in any way releasing or impairing this agreement.
GEO. G. BAYNE,
PHILIP E. ELTING,
G. WILBUR WETZEL,
J. E. CARSON."

This agreement was made at the same time as, and was a part of, the agreement between plaintiff and the American Mausoleum Company. Plaintiff delivered the marble as required by the agreement and was entitled to be paid a net sum of $4547.47. On July 28, 1927, defendants Bayne, Wetzel and Carson executed the following instrument and delivered it to plaintiff:

"AMERICAN MAUSOLEUM COMPANY,
An Illinois Corporation.

George G. Bayne, Community Mausoleums,
 Vice-President. Macomb, Illinois.

*Vermont Marble Co., Chicago, Ill.*

"GENTLEMEN—We hereby consent to and authorize you to release Mr. Philip E. Elting as a surety on your contract for marble, dated May 10th, 1926, with the American Mausoleum Company, upon the signing by Charles E. Dent of Tulsa, Oklahoma, in his stead, and without prejudice as to our signature.

"Very truly yours,
GEO. G. BAYNE,
G. WILBUR WETZEL,
J. E. CARSON."

On the following day defendant Dent executed and delivered to plaintiff the following instrument:

"VERMONT MARBLE Co., July 29, 1927.
 5535 No. Lincoln St., Chicago, Illinois.

"*Gentlemen*—Referring to American Mausoleum Company's letter of July 28th, signed by Mr. Geo. G. Bayne, Mr. G. W. Wetzel and Mr. J. E. Carson, authorizing the release of Mr. Philip E. Elting as surety on your contract for marble dated May 10, 1926, with the American Mausoleum Company.

"I hereby agree to guarantee the amount of your contract in the place of Mr. Philip E. Elting.

"Very truly yours, CHAS. E. DENT."

Both documents last quoted were accepted by plaintiff, and plaintiff thereupon released Elting from his liability under the instrument signed by him May 10, 1926.

On August 4, 1927, Dent, under his contract, paid plaintiff $1000 upon the purchase price of the marble, no part

of the purchase price having been paid by anyone prior to that date and none having been paid since. In the latter part of 1929 the circuit court of McDonough county appointed a receiver for the American Mausoleum Company and fixed a time for filing claims of creditors. With the consent and approval of defendants, plaintiff filed a claim with the receiver. The mausoleum company was dissolved and its assets distributed to its creditors, with the result that plaintiff obtained a total dividend of $225.50. The unpaid balance of the purchase price of the marble, with interest, is $3998.53.

The defendants other than Dent contend that the instrument signed by them May 10, 1926, had the effect of making them sureties; that their consent to release Elting was conditioned upon Dent binding himself with them as sureties; that the instrument signed by Dent made him a guarantor and not a surety, and that therefore the release of their co-surety, Elting, without the substitution of Dent in his place as a co-surety, had the effect of releasing them from all liability to the plaintiff. Dent contends that the instrument signed by him was a mere offer to become a guarantor, which never became effective because plaintiff did not notify him of its acceptance thereof; that there was no consideration for his undertaking, and that, in any event, his obligation is that of a guarantor and not a surety; that the cause of action against him is necessarily separate and distinct from that against the other defendants, and that therefore there is a misjoinder of parties defendant.

In the main, a decision of this case depends upon the construction to be placed upon the instrument signed by Bayne, Wetzel and Carson on July 28, 1927, and the instrument signed by Dent on the following day. It is contended the former was a consent to the release of Elting only in the event Dent should sign the surety instrument of May 10, 1926. It is true the instrument authorized the release of Elting "upon the signing" by Dent "in his

stead," but in our opinion this did not require that Dent affix his signature to the original instrument of suretyship. No doubt all that the parties were interested in was that Dent should assume the liability of Elting, and this could as well be accomplished by the signing of a separate instrument as by signing the original instrument. The consent did not state that it was the original instrument which should be signed by Dent, and to so hold would be to adopt a strained construction of the words used. Had the signers of the consent intended to require Dent to affix his signature to the original instrument signed by them they should have so stated.

It is further contended, however, that the instrument signed by Dent made him a guarantor, only, and did not make him liable as surety in the stead of Elting. This contention is based entirely upon the use of the word "guarantee" and the fact that the instrument signed by Dent did not contain the waivers which were stated in the original instrument of May 10, 1926. The word "guarantee" is frequently used interchangeably with the word "surety," and the mere fact that one word or the other is used in an instrument such as that signed by Dent does not necessarily determine whether the liability intended to be created was that of a guarantor or a surety. In 28 Corpus Juris it is said at pages 891, 892: "Whether the contract is that of suretyship or guaranty does not depend upon the use of particular or technical words such as 'security,' 'surety,' 'guaranty' or 'guarantee.' The nature of the obligation, whether primary or secondary, is the determining element, and although an agreement to stand as 'surety' or become 'security' indicates the undertaking of a surety, if the substance and effect of the instrument is that of a guaranty it will be so construed notwithstanding the word 'surety' or 'security' is used throughout the contract. On the other hand, if the obligation is direct and primary the contract will be that of suretyship

and not of guaranty although the word 'guaranty' or 'guarantee' is employed. A promise to be 'responsible' for the contract of another has been held to be a contract of suretyship and not of guaranty although the circumstance may be such as to constitute it a guaranty." Similarly, in 21 R. C. L. it is said at page 951: "Whether the obligation assumed by a party is that of a guarantor or a surety is to be determined by the intent of the parties as collected from the language of the instrument and the circumstances attending its execution. One who acknowledges himself to be a surety for the amount of a note until satisfactorily paid by the maker assumes the liability of a surety, and his obligation is unqualified by the condition of a guaranty. The phraseology employed is, however, not always, of itself, determinative. Thus, a contract under seal signed jointly by several persons, by which they 'guarantee' and directly obligate themselves, along with one of their number, to pay, absolutely and wholly, irrespective of his solvency or insolvency, all damages which may result to the obligee from his default, and by which they expressly stipulate that the obligee need not exhaust his remedies against their principal before proceeding against them, is a contract of suretyship and not of guaranty." And in 27 Am. & Eng. Ency. of Law, (2d ed.) under the article on Suretyship, it is said at pages 432, 433: "The terms 'suretyship' and 'guaranty' are often confounded from the fact that the guarantor is in common acceptation a surety for another. The true distinction seems to be that a surety is in the first instance answerable for the debt for which he makes himself responsible, while a guarantor is only liable where default is made by the party whose undertaking is guaranteed. * * * The relation may be established by any form of words which expresses such intention, and while the addition of the words 'principal' and 'surety' to their respective signatures may indicate the capacity in which the instru-

ment was executed, the fact of suretyship generally is matter *in pais* and may be explained by parol." In *Border Nat. Bank* v. *American Nat. Bank,* 282 Fed. 73, (C. C. A. 5th cir.) the court said at page 78: "The defendant insists upon a strict construction of the word 'guarantee,' contained in its contract. If there were nothing to limit, qualify or explain its meaning that word might reasonably be construed to imply a promise to pay DeBona's debt in the event he failed to do so. But to ignore the circumstances in which it was used is to attach too much importance to it. It is a word which is frequently employed in business transactions which do not provide for securing the promise or debt of another, to express an original primary obligation. The promise in which the word appears is to be construed in the light of the evidence and as a whole." To the same effect are *Bridge* v. *Welda State Bank,* 292 S. W. (Mo.) 1079, *Saint* v. *Wheeler & Wilson Manf. Co.* 95 Ala. 362, 10 So. 539, and *News-Times Pub. Co.* v. *Doolittle,* 51 Colo. 386, 118 Pac. 974.

In view of the foregoing authorities it is clear that the instrument signed by Dent may, notwithstanding the use of the word "guarantee," be construed to make him a surety. The question is one of intention and depends upon the circumstances. The consent signed by three of the defendants authorized plaintiff to release Elting upon the signing by Dent "in his stead." The instrument signed by Dent on the following day expressly referred to the letter signed by Bayne, Wetzel and Carson as "authorizing the release of Mr. Philip E. Elting as surety," and stated, "I hereby agree to guarantee the amount of your contract in the place of Mr. Philip E. Elting." It seems apparent that Dent intended to incur a liability commensurate with that of Elting and in substitution therefor. By reference, he in effect incorporated in his letter the letter of the other three defendants and obviously intended to comply strictly with the consent therein given. This conclusion is sup-

ported, also, by the fact that within six days after he signed his letter of July 29, 1927, he paid to plaintiff $1000 upon the purchase price of the marble. Had he intended to assume only the liability of a guarantor and not that of a surety he would not have been obliged to make any such payment at that time, for his liability would have been a secondary one while the liability of the mausoleum company and the three other defendants would have been the primary one. Where parties have adopted a particular construction of doubtful terms or conditions of a contract this court will follow the construction such parties have themselves placed upon it. *McLean County Coal Co.* v. *City of Bloomington,* 234 Ill. 90.

We are convinced that Dent intended by the instrument signed by him to accept the full liability of Elting and in all respects to take the place of Elting as surety. The defendants Bayne, Wetzel and Carson were therefore not released as sureties merely because the plaintiff released Elting and accepted the defendant Dent in his stead as surety.

On behalf of Dent it is argued, however, that the instrument signed by him was merely an offer to guarantee and could not become binding upon him until notice of its acceptance had been communicated to him. This is the general rule with respect to the liability of a guarantor, but it is not the rule in case of a surety. Moreover, the record demonstrates that Dent was notified of the acceptance of the instrument signed by him and of his liability thereunder, inasmuch as six days later he paid to plaintiff the sum of $1000 above referred to.

The claim that there was no consideration for Dent's obligation is equally untenable. The consideration consisted of the release by plaintiff of Elting in exchange for the assumption of Elting's obligation by Dent.

What we have said above also disposes of the contention that there was a misjoinder of parties defendant.

Dent became liable as a surety with the other defendants and was therefore properly sued with them.

The judgments of the Appellate Court and of the circuit court are reversed and the cause is remanded to the circuit court of McDonough county, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE ORR, dissenting:

I cannot agree with the reasoning or result of the foregoing opinion. In my judgment the instrument of July 29, 1927, that was signed by Charles E. Dent did not satisfy the requirements of the consent signed by the three other defendants on the preceding day. The consent to the release of Elting after referring to the original contract of May 10, 1926, signed by the three defendants, was conditioned "upon the signing" by Dent "in his stead, and without prejudice as to our signature." The word "signing" evidently referred to the instrument of May 10, 1926, because it did not refer to any other instrument. Moreover, the words "without prejudice as to our signature" evidently contemplated that the signature of Dent should be affixed to the same document where the other signatures appeared, for otherwise there would have been no purpose in using these words. The instrument signed by Dent on the following day referred to the consent for the release of Elting "as surety," and apparently used the word "guarantee" in contrast to the word "surety." The obligation expressly assumed by Dent was "to guarantee the amount of your contract," referring to plaintiff's contract. In the instrument signed by him Dent did not waive any of the rights which had been expressly waived by the other defendants in the instrument signed by them, and it would therefore seem clear that he did not expressly make himself liable to the same extent and in the same manner as the other de-

fendants. In my opinion he became liable only as a guarantor and not as a surety.

There is a substantial distinction between the liability of a surety and that of a guarantor. A surety's undertaking is an original one, by which he becomes primarily liable with the principal debtor, while a guarantor is not a party to the principal obligation and bears only a secondary liability. The surety's agreement is that he will do what his principal has agreed to do, whereas the undertaking of the guarantor is that the principal will do what he has agreed to do. The surety becomes primarily and directly liable on his contract from the beginning and is bound with the principal upon the same contract, while the guarantor ordinarily becomes liable for the performance of a prior or collateral contract upon which the principal, alone, is obligated. (12 R. C. L. p. 1057; 28 Corpus Juris, 890, 891.) This is an action at law and the provisions of the instrument relied upon must be strictly construed. A court of law has no right to presume that the contracting parties intended to insert in a written contract a provision other or different from that which the plain language used would indicate and then give a construction which would be legitimate if the contract contained the supposed omitted provision. Such a practice would, in effect, be making contracts for parties, which courts are powerless to do. (*Fitzgerald* v. *Staples,* 88 Ill. 234; *Phillips* v. *Singer Manf. Co.* 88 id. 305.) While it is a general rule that in construing a contract it is proper for the court to take into consideration the surrounding circumstances, this does not give the court the right, by construction, to establish a different contract from that expressed in the written agreement. (*Green* v. *Ashland State Bank,* 346 Ill. 174.) No words can be added to or taken from an instrument and thereby change the plain meaning of the parties as expressed therein. (*Stevens* v. *Felman,* 338 Ill. 391; *LaRocque* v. *Martin,* 344 id. 522; *Foss* v. *State Bank and Trust Co.* 343 id. 94.)

Here the situation is that Dent agreed merely "to guarantee the amount of your contract," and did not make himself primarily liable with either the mausoleum company or the other three defendants who were sureties. Inasmuch as the consent of the three other defendants to the release of Elting was conditioned upon Dent undertaking to become liable as a surety with them, and since plaintiff released Elting without complying with the provisions of that consent, this amounted to a release of Bayne, Wetzel and Carson. It is well settled that at common law a release of one of several joint debtors, such as sureties, without the consent or authority of the others, has the effect of discharging all from liability. *Benjamin* v. *McConnel,* 4 Gilm. 536; *Rice* v. *Webster,* 18 Ill. 331; 21 R. C. L. 1050; 50 Corpus Juris, 186, 187; 28 id. 1008.

There is no allegation in the amended declaration that there was any consideration for the undertaking of Dent, who signed the instrument of July 29, 1927, before the alleged release of Elting. This instrument did not express any consideration for the undertaking of Dent, and his undertaking was not made conditional upon the release of Elting. Plaintiff at no time agreed to release Elting and at no time advised Dent that it had released Elting. The instrument signed by Dent was, at most, an offer to become a guarantor, and no notice was ever given by plaintiff to Dent that his offer had been accepted, hence the demurrer of Dent was properly sustained. Inasmuch as the instrument signed by him made him liable, if at all, as a guarantor, the cause of action against him would have been a separate one and independent of the cause of action against Bayne, Wetzel and Carson. The liability of the latter was a primary one, whereas the liability of a guarantor is a secondary one. A guarantor can no more be sued on his liability as such in a suit brought against him and his sureties than a guarantor can be joined with the principal debtor in the same suit. (*Sleeper & Co.* v. *Ban-*

*quet Hall Co.* 166 Ill. 57; 28 Corpus Juris, pp. 891, 1013.) For this reason, also, the trial court properly sustained the demurrer of Dent, and the judgment of the Appellate Court was therefore correct and should be affirmed.

Mr. JUSTICE HERRICK concurs in this dissenting opinion.

Mr. JUSTICE STONE, also dissenting.