Docket No. 107682.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

JPMORGAN CHASE BANK, N.A., Appellant, v. EARTH FOODS,
INC., *et al.* (Leonard S. DeFranco, Appellee).

*Opinion filed October 21, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

In this appeal, we address whether section 1 of the Sureties Act
(740 ILCS 155/1 (West 2000)) is applicable to guarantors. JPMorgan
Chase Bank (Bank) filed suit against Earth Foods, Inc., for breach of
contract, and against Michael Jarvis, Theodore L. Petrovich, and
Leonard S. DeFranco as guarantors of a defaulted loan. DeFranco
sought protection under section 1 of the Sureties Act.

The circuit court of Kane County granted summary judgment in
favor of the Bank on the ground that DeFranco was a guarantor, not
a surety, concluding that the Sureties Act was inapplicable. The
appellate court affirmed in part, reversed in part, and remanded,
finding that the term "surety," as used in the Sureties Act,
encompasses both a surety and a guarantor. 386 Ill. App. 3d 316.

We allowed the Bank's petition for leave to appeal. 210 Ill. 2d R. 315. We now affirm in part and reverse in part the judgment of the appellate court and remand the cause to the trial court for further proceedings.

## I. BACKGROUND

In 2001, the Bank extended a line of credit to Earth Foods, Inc. The three co-owners of Earth Foods, Michael Jarvis, Theodore Petrowich, and Leonard DeFranco, all personally guaranteed the loan. DeFranco was then vice president of Earth Foods. On April 3, 2003, DeFranco sent the Bank a letter warning that Earth Foods was depleting the inventory that was to serve as collateral for the loan and demanding the Bank take action. Earth Foods stopped making payments to the Bank in February 2004. On April 23, 2004, the Bank sent a notice of default and demand for payment.

On June 9, 2004, the Bank filed suit against Earth Foods and the three co-owners who guaranteed the note. DeFranco moved to dismiss the claim against him but did not dispute that he had agreed, as "guarantor," to pay all amounts owed by Earth Foods in the event of Earth Foods' default. Nonetheless, DeFranco's answer claimed an affirmative defense on the ground he was protected under section 1 of the Sureties Act (740 ILCS 155/1 (West 2000)). DeFranco claimed his guaranty obligation was discharged under the Sureties Act because the Sureties Act "applies to guarantors as well as sureties" and "[t]he law places no distinction" between guarantors and sureties. DeFranco maintained that the Bank was estopped from seeking payment from him because he notified the Bank that Earth Foods was operating at a financial loss.

On May 4, 2006, the Bank filed a motion for summary judgment against DeFranco. In his response to the Bank's motion for summary judgment, DeFranco stated, "The issue is not whether or not Mr. DeFranco understood the guaranty at the time that he signed it. The real issue is whether the bank is precluded from collecting on the guarantee." (Emphasis omitted.) The circuit court granted the Bank's motion for summary judgment, holding that the Sureties Act does not extend to guarantors.

The appellate court reversed, holding that guarantors may seek

protection under the Sureties Act. 386 Ill. App. 3d 316. The appellate court recognized that the relevant question here is the meaning of the word "surety" in section 1 of the Sureties Act. The appellate court acknowledged that the term "surety" has two meanings. The court explained that "surety" "is sometimes used to refer to any situation in which a person agrees to be liable for the debt of another, whether the liability is primary as a surety or secondary as a guaranty, and it is sometimes used to refer strictly to a surety who is primarily liable." 386 Ill. App. 3d at 321. The court further acknowledged that the terms "surety" and "guarantor" have distinct meanings but found, however, that the distinction appears largely academic. 386 Ill. App. 3d at 321-22. The court also relied on the policy it discerned as underlying the Act–to compel diligence by a creditor to make certain a surety is protected against loss–applies equally to sureties and to guarantors and on its belief that the word "surety" is used in the Act without any words of limitation or explanation. 386 Ill. App. 3d at 322-23. The court ultimately determined that the legislature's use of the word "surety" was intended "in its general sense." 386 Ill. App. 3d at 323. In reaching its decision, the appellate court relied on a case from the United States Court of Appeals for the First Circuit, *Continental & Commercial Nat. Bank of Chicago v. Cobb*, 200 F. 511 (1st Cir. 1912), interpreting section 1 of the Sureties Act as applying to guarantors. The appellate court therefore remanded the cause for further proceedings to determine whether DeFranco could benefit from the Act, given the facts of this case. 386 Ill. App. 3d at 324.

## II. ANALYSIS

We review the appellate court's reversal of the circuit court's grant of summary judgment in favor of the Bank. Summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2000). We review *de novo* the propriety of a circuit court's grant of summary judgment. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

Whether the circuit court properly granted summary judgment in

favor of the Bank turns on the interpretation of section 1 of the Sureties Act (740 ILCS 155/1 (West 2000)). We review *de novo* an issue of statutory construction. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996).

A. Statutory Construction of Section 1 of the Sureties Act

Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). The plain language of a statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna*, 223 Ill. 2d at 59. The statute should be read as a whole and construed "so that no term is rendered superfluous or meaningless." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). We do not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the legislative intent. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 251 (2004).

The Bank contends that the appellate court erred in looking to the "popularly understood" meaning of "surety," as opposed to its meaning in 1874, when the Sureties Act was enacted. Conversely, DeFranco contends that the Bank has waived or forfeited its argument that the term "surety" must be interpreted in light of its meaning at the time the Sureties Act was enacted in 1874.

The Bank's argument that the term "surety" must be interpreted in light of its meaning at the time the Sureties Act was enacted involves canons of statutory construction. Canons of statutory construction cannot be forfeited because they are not arguments. They are the principles that guide this court's construction of statutes. Canons of statutory construction are utilized in every statutory construction case whether a party raises them or not. To hold that canons of statutory construction are subject to forfeiture would mean that this court's construction of a particular statute could change from case to case depending on whether a party cited a particular cannon. This obviously cannot be so. Accordingly, we reject DeFranco's argument that the Bank waived or forfeited its contention that the

-4-

term "surety" must be interpreted in light of its meaning at the time the Sureties Act was enacted in 1874.

This court has long recognized the fundamental rule of statutory construction that " '[s]tatutes are to be construed as they were intended to be construed when they were passed.' " *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 441 (2008), quoting *People v. Boreman*, 401 Ill. 566, 572 (1948). Additionally, we look to the well-known meaning of statutory terms at the time the law was passed. *People v. Bailey*, 232 Ill. 2d 285, 290 (2009), citing *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 115, 84 L. Ed. 110, 119, 60 S. Ct. 1, 7 (1939). See also 2A N. Singer, Sutherland on Statutory Construction §46:04, at 152-53 (6th ed. 2000) ("if the term utilized [in a statute] has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate the established meaning"). Moreover, "statutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication." *Summers v. Summers*, 40 Ill. 2d 338, 342 (1968). "Even if a statute has remedial features but is in derogation of the common law, it will be strictly construed when determining what persons come within its operation." *In re W.W.*, 97 Ill. 2d 53, 57 (1983), citing *Cedar Park Cemetery Ass'n, Inc. v. Cooper*, 408 Ill. 79, 82-83 (1951); *Lites v. Jackson*, 70 Ill. App. 3d 374, 376 (1979).

We begin by examining the history of the Sureties Act. On March 24, 1819, the legislature passed "AN ACT providing for the relief of securities in a summary way in certain cases" (hereafter, Securities Act) Ill. Laws 1819, at 243. In 1819, section 1 of the Securities Act provided:

> "That when any person or persons shall hereafter become bound as security or securities by bond, bill or note, for the payment of money or other property, shall apprehend that his or their principal debtor or debtors is or are likely to become insolvent, or to migrate from this state, without previously discharging such bond, bill, or note, so that it will be impossible or extremely difficult for such security or securities, after being compelled to pay the money or other property due by such bond, bill or note, to recover the same back from such principal debtor or debtors, it shall and may be lawful for such

-5-

security or securities in every such case, provided an action shall have accrued on such bond, bill, or note, to require by notice in writing of his, her, or their creditor or creditors or his or their assignee, forthwith to put the bond, bill, or note, by which he, she, or they may be bound as security or securities, as aforesaid, in suit; and unless such creditor or creditors or assignee, so required, to put such bond, bill, or note in suit, shall in a reasonable time, commence action on such bond, bill or note, and proceed with due diligence in the ordinary course of law, to recover a judgment for and by execution, to make the amount due by such bond, bill or note, the creditor or creditors, or assignee so failing to comply with the requisitions of such security or securities, shall thereby forfeit the right which he or they otherwise have to demand and receive of such security or securities, the amount which be due by such bond, bill or note." Ill. Laws 1819, at 243-44, §1.

The Securities Act was amended in 1829, 1833, and 1845. See Ill. Laws 1829, at 155, §1; Ill. Laws 1833, at 570, §1; Ill. Laws 1845, at 493, §1. The substance of section 1 of the Securities Act, however, remained the same in the 1845 version and in the 1819 version.

On February 27, 1874, the legislature passed "An Act to revise the law in relation [to] sureties" (hereafter, the Sureties Act). Ill. Rev. Stat. 1874, ch. 132, par. 1. In 1874, section 1 of the Sureties Act read:

"That when any person bound as surety for another for the payment of money, or the performance of any other contract in writing, apprehends that his principal is likely to become insolvent or to remove from the state, without discharging the contract, if a right of action has accrued on the contract, he may, by writing, require the creditor forthwith to sue upon the same; and unless such creditor shall within a reasonable time, and with due diligence, commence suit thereon, and prosecute the same to final judgment and execution, the surety shall be discharged; but no such discharge shall in any case affect the rights of the creditor against the principal debtor." Ill. Rev. Stat. 1874, ch. 132, par. 1.

The 1874 version of the Sureties Act changed the term "securities" to "sureties" and updated the language of the Act. The substance of the

Act, however, remained the same, that is, providing that a surety may, by notice in writing, require the creditor to sue the principal, and if the creditor fails to sue, the creditor forfeits the right of action against the surety.

The language of the Sureties Act was updated in 1985, to provide as follows:

> "When any person is bound, in writing, as surety for another for the payment of money, or the performance of any other contract, apprehends that his principal is likely to become insolvent or to remove himself from the state, without discharging the contract, if a right of action has accrued on the contract, he may, in writing, require the creditor to sue forthwith upon the same; and unless such creditor, within a reasonable time and with due diligence, commences an action thereon, and prosecutes the same to final judgment and proceeds with the enforcement thereof, the surety shall be discharged; but such discharge shall not in any case affect the rights of the creditor against the principal debtor." Ill. Rev. Stat. 1985, ch. 132, par. 1.

Although the language of section 1 of the Sureties Act and its predecessor was updated in 1874 and in 1985, the substance of the Act has remained the same since 1819. We now consider whether the General Assembly intended that the Act provide relief to guarantors.

This court has recognized that dictionary definitions are reliable indicators of the meaning of an undefined statutory term. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 243 (2005). Legal dictionaries during the relevant time articulated a distinction between a "guarantor" and a "surety." One pre-1900 dictionary defined "guaranty" as "to *undertake collaterally* to answer for the payment of another's debt or the performance of another's duty, liability, or obligation," and a "surety" as "one who *** becomes responsible for the performance [of the principal] of some act." (Emphasis added.) H. Black, A Law Dictionary Containing Definitions of the Terms & Phrases of American & English Jurisprudence 550, 1127 (1891). A 1901 edition of a relevant dictionary defined "guaranty" as "a *collateral undertaking* to pay the debt of another," and a "contract of suretyship" as a "*direct liability* for the act to be performed by the debtor." (Emphases added.) W. Shumaker & G. Longsdorf, The

Cyclopedic Dictionary of Law Comprising the Terms and Phrases of American Jurisprudence 423 (1901).

Nevertheless, most treatises have recognized a guaranty as a form of suretyship. One such treatise explained:

> "The term suretyship is frequently employed in a narrow, technical or specific sense, usually to distinguish it from that particular form of suretyship in its broad sense known as guaranty. Frequently this distinction is not important to be made, as the same rules often govern the relations of the parties whether a given transaction is strictly and technically a suretyship or a guarantee, and courts and text writers frequently use either term to describe the same contract with little or no regard to any technical differences or distinctions between them." E. Spencer, The General Law of Suretyship §3, at 3-4 (1913).

Another, more recent, treatise defined suretyship broadly, as "a contractual relation whereby one person engages to be answerable for the debt or default of another. Within this broad definition fall contracts of guarantors and indorsers, as well as those of sureties in the restricted sense." J. Elder, Stearns Law of Suretyship 1 (1951).

These treatises, however, also articulated a clear distinction between a "guarantor" and a "surety." One treatise, remarking on the distinction between sureties and guarantors, stated: "the two classes of contracts should not be confounded, and that the rules of law applicable to only one, should not be applied indiscriminately to either." E. Baylies, A Treatise on the Rights, Remedies & Liabilities of Sureties & Guarantors 5 (1881). See also G. Brandt, The Law of Suretyship and Guaranty §2, at 9 (1905) ("The words surety and guarantor are often used indiscriminately as synonymous terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted").

While these treatises recognized a guaranty as a form of suretyship, all of these treatises drew a clear distinction between the terms "surety" and a "guaranty" in the technical sense when describing the specific undertakings. As one treatise explained in distinguishing suretyship in its narrow or specific sense from guaranty:

"Still, a distinction between suretyship and guaranty must often be drawn as the same principles do not always apply to both undertakings. A surety, strictly speaking, is one who is bound with the principal, usually jointly or jointly and severally, by or upon the same contract or instrument. While both guaranty and suretyship are undertakings for the debt or default of another and hence accessory, a strict suretyship is *a primary and direct undertaking*, while a guaranty is *secondary and collateral*." (Emphases added.) E. Spencer, The General Law of Suretyship §3, at 3-4 (1913).

G. Brandt, The Law of Suretyship and Guaranty §2, at 9-10 (1905), explained the difference between surety and guarantor as follows:

"A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. Usually the surety will not be discharged, either by the mere indulgence of the creditor to the principal, or by want of notice of the default of the principal, no matter how he may be injured thereby. On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its non-performance. The guarantor is often discharged by the mere indulgence of the creditor to the principal, and is usually not liable unless notified of the default of the principal."

Another treatise described the distinction between the obligation suretyship and guarantee as:

"the surety undertakes to pay if the principal does not; while the guarantor undertakes to pay if the principal cannot; that is, if he is insolvent and unable to pay. The surety is directly liable to the creditor for the act to be performed, while the guarantor is liable only for the ability of another to perform the act. The undertaking under suretyship is immediate and direct that the

-9-

act shall be done; if not done, the surety becomes at once responsible. In the case of guaranty, nonliability of the debtor, that is, his insolvency, must first be shown before the guarantor becomes liable." D. Pingrey, A Treatise on the Law of Suretyship and Guaranty §4, at 3 (1901).

This clear distinction between the obligations of sureties and guarantors continued to exist even in 1922, when Corpus Juris stated:

"A guaranty is like a suretyship in the sense that it is an engagement to answer for the debt, default, or miscarriage of another, and for this reason the terms 'surety' and 'guarantor' or 'guaranty' are often confounded and used interchangeably. *The two subjects, however, have some important distinguishing features ***.*

*** While each is, as to the principal, collaterally liable as to the creditor or obligee the *surety is primarily and directly liable on his contract from the beginning, whereas the liability of the guarantor is secondary and is fixed only by the happening of the prescribed condition* at a time after the contract itself is made. A surety is bound with the principal on the identical contract under which the liability of the principal accrues; a guarantor becomes bound for the performance of a prior or collateral contract upon which the principal alone is obligated. The contract of the surety is made at the same time and usually jointly with that of his principal; while that of the guarantor is a contract separate and distinct from that of his principal, it may be made at the same time and upon the same consideration, but it usually is made later and upon a separate consideration. The contract of the surety is a direct original agreement with the obligee that the very thing contracted for shall be done, whereas a guarantor enters into a cumulative collateral engagement, by which he agrees, that his principal is able to and will perform a contract which he has made or is about to make, and that if he defaults the guarantor will, upon being notified thereof, pay the resulting damages. *A surety is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or solvency of the principal.*" (Emphases added.) 28 C.J. §§ 4, 5, at 890-91 (1922).

Moreover, this court has reinforced this acknowledged distinction

-10-

between guarantors and sureties. In *Gridley v. Capen*, 72 Ill. 11 (1874), this court recognized the distinction between guarantors and sureties:

> "The definition of a guaranty, by text-writers, is, an undertaking by one person that another shall perform his contract or fulfil his obligation, or that, if he does not, the guarantor will do it for him. A *guarantor* of a bill or note is said to be one who engages that the note shall be paid, but *is not an indorser or surety*." (Emphases added.) *Gridley*, 72 Ill. at 13.

Similarly, in *Vermont Marble Co. v. Bayne*, 356 Ill. 127 (1934), this court recognized:

> " 'The terms "suretyship" and "guaranty" are often confounded from the fact that the guarantor is in common acceptation a surety for another. *The true distinction seems to be that a surety is in the first instance answerable for the debt for which he makes himself responsible, while a guarantor is only liable where default is made by the party whose undertaking is guaranteed.*' " (Emphasis added.) *Vermont Marble Co.*, 356 Ill. at 132, quoting 27 Am. & Eng. Ency. of Law 432, 433 (2d ed.).

Additionally, we note that many treatises shed light on statutory provisions giving sureties the right to compel the creditor to sue the principal. As one treatise explained:

> "At common law the surety generally had no right to compel the creditor to take action against the principal after the maturity of the obligation. Accordingly, the surety was not discharged because of the creditor's neglect or failure to sue the principal when requested to do so by the surety." J. Elder, The Law of Suretyship §6.38, at 165.

This treatise then states that many jurisdictions passed statutes similar to Illinois' Sureties Act and that it was generally held the statute must be strictly followed, because the statute was in derogation of the common law. J. Elder, The Law of Suretyship §6.38, at 168.

Another, even older, treatise recognized that such statutes have only applied to sureties, in the limited definition of that term, and that such statutes did not contemplate indorsers or accommodation

indorsers as sureties. G. Brandt, The Law of Suretyship and Guaranty §771, at 1350 (1905). In fact, this treatise notes one of our own cases that held a party could not avail himself of the statute when the note did not indicate the fact of suretyship. G. Brandt, The Law of Suretyship and Guaranty §771, at 1350 (1905), citing *Payne v. Webster*, 19 Ill. 102 (1857). This treatise cites another Illinois case in stating that such "[s]tatutes for the acceleration of suits against principals apply only to conventional suretyship." G. Brandt, The Law of Suretyship and Guaranty §202, at 518 (1905), citing *Fish v. Glover*, 154 Ill. 86 (1894). In *Fish*, this court held that the statute had no application to cases when the relation of the principal and surety arises by implication, and specifically stated that this statute "refers to contracts in writing binding sureties, and not to contracts of suretyship arising by implication." *Fish*, 154 Ill. at 94.

Thus, the legal dictionaries, treatises, and court decisions have recognized a clear legal distinction between guarantors and sureties for nearly two centuries. The weight of relevant authority on this question is highly instructive in our consideration of the legislature's intent in passing the Act.

When discerning legislative intent, it is also proper to compare statutes relating to the same subject matter as well as statutes "upon related subjects though not strictly *in pari materia*" because "statutes are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment." *Boreman*, 401 Ill. at 571-72. In 1895, the General Assembly added "guarantors" but not "sureties" in the existing Actions to Enforce Payment Act:

"Whenever the drawer or endorser of an accepted bill of exchange, or the endorser or *guarantor* of a promissory note shall have been joined with the acceptor of said bill or the maker of said note in a suit to enforce the collection thereof, and judgment has been recovered against any such drawer, endorser or *guarantor* who shall thereafter pay the same, the person so paying shall be entitled to have the judgment released as to him, but the same shall, at his option, stand and may be enforced by execution under the order of the court against any other party thereto who remains liable to the party paying as upon said bill or note, for the reimbursement of the party so paying." (Emphases added.) 1895 Ill. Laws 263, §4,

codified at 815 ILCS 115/4.

Our appellate court subsequently held that the Actions to Enforce Payment Act protected only guarantors and not sureties. See *Harris v. Harris*, 92 Ill. App. 455, 457 (1900). Thus, the distinction between sureties and guarantors is well established in Illinois jurisprudence. We note that decisions of our sister states issued prior to 1900 also recognized the legal and practical distinction between guarantors and sureties. See, *e.g.*, *Gaff v. Sims*, 45 Ind. 262, 264-65 (1873) ("[t]here are important differences between the contract of suretyship and that of guaranty"); *Reigart v. White*, 52 Pa. 438, 440 (1866) ("the best solution of the difference [between a surety and guarantor is]; a contract of suretyship being a direct liability *** and a guaranty being a liability only for his ability to perform this act"); *Allen v. Herrick*, 81 Mass. 274, 285 (1860) ("The liability of a guarantor is not fixed and absolute until the party primarily liable on the contract has failed to perform it," and "[u]ntil such failure, the obligation of the guarantor is strictly collateral and contingent, and this constitutes the chief distinction between a contract of guaranty simply and that of principal and surety"); *Perry v. Barret*, 18 Mo. 140, 146 (1853) (holding that the trial court erred in its instructions, treating the case as one of suretyship, and not as one of guarantee).

We also note that even more recent decisions of other states interpreting similar pre-1900 statutory provisions have held that guarantors cannot seek protection under provisions intended to protect only sureties. See *State Bank of Burleigh County v. Porter*, 167 N.W.2d 527 (N.D. 1969) (interpreting statute enacted in 1877 and holding that guarantor cannot seek protection under sureties provision); *Bishop v. Currie-McGraw Co.*, 97 So. 886, 888-89 (Miss. 1923) (interpreting statute enacted in 1857 and holding that the term "surety" does not encompass guarantors). While these authorities are not binding on this court, we find them highly instructive on the generally understood differences between a guarantor and a surety at the time our legislature enacted the Sureties Act. Based on these and our earlier cited authorities, we are compelled to conclude that our legislature meant to include only sureties, meaning those who are primarily and directly liable for a debt, not guarantors, those who are only liable when the principal defaults on the debt, in the Act's protections.

-13-

Nonetheless, the appellate court relied on *Cobb*, 200 F. 511, in determining that the legislature intended the term "surety" in its most general sense of that term. In *Cobb*, the First Circuit noted that the term "surety" had both a special sense and a general sense but disagreed with the plaintiff's argument that the legislature intended the special sense:

> "This is altogether too narrow a construction of a remedial statute to meet the approval of any court of justice. The word 'surety' is a generic word, while 'guaranty' is specific. Guarantors have certain specific protected rights which other sureties do not have; but they are entitled to every equitable right of protection which any surety has." *Cobb*, 200 F. at 515.

The problem with the *Cobb* court's analysis is that the Sureties Act does not specifically give guarantors any protected rights. Additionally, while guarantors may be entitled to *equitable* rights of protection, as noted in *Cobb*, the Sureties Act provides a *statutory* right.

Moreover, the *Cobb* court glossed over the decision in *Ross v. Jones, Brown & Co.*, 89 U.S. (Wall.) 576, 22 L. Ed. 730 (1875). In *Ross*, the United States Supreme Court held that an indorser of a note is not a "person bound as security," within the meaning of an Arkansas statute strikingly similar to the Sureties Act. The Arkansas statute provided:

> "SECTION 1. Any person bound as security for another in any bond, bill, or note, for the payment of money, or the delivery of property, may, at any time after action hath accrued thereon, by notice in writing, require the person having such right of action forthwith to commence suit against the principal debtor and other party liable.
>
> SECTION 2. If such suit be not commenced within thirty days after the service of such notice, and proceeded in with due diligence, in the ordinary course of law, to judgment and execution, such security shall be exonerated from liability to the person notified." Gould's Digest, 1015.

In holding that the indorser of a note or bill is not a surety within the meaning of the Arkansas statute, the Supreme Court reasoned:

-14-

"Indorsers, it is sometimes said, are sureties, but their contract, which is a new one as compared with the maker of the note, differs in some important respects from that of the surety, who is a joint promisor with the principal, as the holder of such an instrument is under no obligation to use diligence to enforce payment against the maker in order to hold the indorser." *Ross*, 89 U.S. (Wall.) at 588, 22 L. Ed. at 734.

The Supreme Court further explained:

"Evidently the statute contemplates that the cause of action will accrue against the principal and surety at the same time, which is never the case with the indorser and maker. Such a notice may unquestionably be given by a surety proper, whether his contract is expressed in a bond, bill, or note, as soon as the instrument falls due; but it would be unreasonable to suppose that an indorser would give such a notice before his liability had become fixed, as it may be that such a demand to sue would operate as waiver of the right to notice of the dishonor of the note. Nor is it necessary to extend the operation of the statute so as to include an indorser, in order to satisfy the literal scope of the language employed. 'Persons, bound as security for another,' are the words of the statute, which undoubtedly includes sureties proper in a bond, bill, or note, but it would be extending the words of the statute beyond their reasonable meaning, to hold that it includes an indorser whose liability is fixed by the required notice of the dishonor of the bill or note." *Ross*, 89 U.S. (Wall.) at 591, 22 L. Ed. at 735.

The Supreme Court then recognized that the Arkansas statute was passed in derogation of the common law and should be construed strictly. *Ross*, 89 U.S. (Wall.) at 591-92, 22 L. Ed. at 735. Accordingly, the Court held that an indorser is not a surety within the meaning of the Arkansas statute. *Ross*, 89 U.S. (Wall.) at 594, 22 L. Ed. at 736. Our construction of the Sureties Act is consistent with *Ross*.

We acknowledge that the appellate court gave two other bases for its holding: (1) that the policy behind the Act–to compel diligence by a creditor to make certain a surety is protected against loss–applies equally to sureties and to guarantors; and (2) that the word "surety"

-15-

is used in the Act without any words of limitation or explanation. However, given the clear weight of authority that drew a distinction between guarantors and sureties at the relevant time, these reasons are not sufficient to convince us that the legislature meant to use the term "surety" in its general sense.

In sum, a suretyship differs from a guaranty in that a suretyship is a primary obligation to see that the debt is paid, while a guaranty is a collateral undertaking, an obligation in the alternative to pay the debt if the principal does not. We hold that the General Assembly did not intend the term "surety" to include guarantors and, therefore, the protections afforded under this plain language chosen by the legislature in the Sureties Act are not applicable to guarantors. Accordingly, we reverse that part of the appellate court judgment holding that the Sureties Act applies to guarantors.

B. Whether the Trial Court Properly Entered Summary Judgment

We next consider whether the trial court properly entered summary judgment in favor of the Bank. We reiterate that summary judgment is appropriate only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2000).

DeFranco contends, for the first time in his brief to this court, that he is a surety and not a guarantor or, "at the very least, a dispute remains over whether DeFranco stands as a surety or guarantor." The Bank contends that DeFranco "forfeited this argument by judicial admission" by repeatedly referring to himself as a "guarantor" in the trial court pleadings. This is not a true forfeiture argument. Forfeiture is the failure to comply timely with procedural requirements in preserving an issue for appeal. See *Gallagher v. Lenart,* 226 Ill. 2d 208, 229 (2007). Likewise, we reject the judicial admission argument because the issue of whether DeFranco is a guarantor or a surety is a mixed question of law and fact. Judicial admissions are "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). A party is not bound by admissions regarding conclusions of law because the courts determine the legal effect of the facts adduced.

*People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 223 (2006) (holding a party not bound by a statement in a complaint that an installment agreement was a settlement agreement). Moreover, DeFranco has contended that a guarantor and a surety are the same under the Act, making his choice of label irrelevant to a determination of his true status.

DeFranco contends that the circuit court erred in entering summary judgment in favor of the Bank because the contract language of the signed instrument made him a surety and, therefore, the Sureties Act is applicable, despite the use of the word "guarantee" in the instrument. We agree with DeFranco that the use of the terms "guarantee" or "surety" in an instrument "does not necessarily determine whether the liability intended to be created was that of a guarantor or a surety." *Vermont Marble Co*., 356 Ill. at 131. Rather, when viewed as a whole along with any other evidence of the parties' intentions and the circumstances, a written instrument such as the one DeFranco signed may be construed to create a suretyship despite its use of the term "guarantee."

Indeed, this court has expressly recognized that parol evidence may be used to determine whether a suretyship exists, even when a party " 'insists upon a strict construction of the word "guarantee," contained in its contract.' " *Vermont Marble Co.*, 356 Ill. at 133, quoting with approval *Border Nat. Bank of Eagle Pass v. American Nat. Bank of San Francisco*, 282 F. 73, 78 (5th Cir. 1922). As this court explained,

> " 'to ignore the circumstances in which [*the word "guarantee"*] *was used* is to attach too much importance to it. It is a word which is frequently employed in business transactions which do not provide for securing the promise or debt of another, to express an original primary obligation. The promise in which the word appears is to be *construed in the light of the evidence and as a whole*.' " (Emphases added.) *Vermont Marble Co.*, 356 Ill. at 133, quoting *Border Nat. Bank*, 282 F. at 78.

Thus, "[t]he question is one of [the parties'] intention[s] and *depends upon the circumstances,*" permitting the court to consider factual matters outside the language of the document to determine the true nature of the relationship intended between the parties. (Emphasis added.) *Vermont Marble Co*., 356 Ill. at 133. See also E. Spencer,

The General Law of Suretyship §92, at 123 ("Where the language of a contract of guarantee or suretyship is ambiguous and susceptible of more than one interpretation, parol evidence will be freely admitted as in the case of other written contracts").

In *Tinker v. Catlin*, 205 Ill. 108, 118-19 (1903), this court considered whether the appellants fell within the protections of a statute releasing sureties from liability if the creditors did not timely raise a debt. In analyzing that issue, this court comprehensively reviewed the relevant parol evidence, including the facts leading up to the creation of the documents that allegedly formed a suretyship with an appellant. *Tinker*, 205 Ill. at 121 ("[n]or do we think appellant *** has established, *by the evidence*, any such contract as would create the relation of principal maker and surety between him and [another party]" (emphasis added)). Thus, the more general meaning of the word "guarantee" often used in business contexts may require courts to consider evidence outside the language used in the document to determine whether the parties intended to create a guaranty or surety.

Here the case was decided on summary judgment, denying both the parties and trial court the benefit of the full development of DeFranco's argument about whether the parties intended him to be a surety even though the written agreement referred only to a "guarantee." In the absence of the full development of DeFranco's current argument, the trial court never had the opportunity to rule on the merits of this position.

Because genuine issues of material fact remain over whether the parties intended that DeFranco stand as a surety or guarantor under his agreement with the Bank, we hold that the circuit court erroneously entered summary judgment in favor of the Bank. We therefore affirm that part of the appellate court judgment holding that the trial court erred in entering summary judgment in favor of the Bank. We remand the cause to the trial court for further proceedings to determine the intent of the parties from the language and circumstances of the agreement.

### III. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the appellate court, reverse the judgment of the circuit court, and remand the cause to the circuit court for further proceedings.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment reversed;*
*cause remanded.*